# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00603-CV

**Roy D. Foster, Appellant**

**v.**

**Centrex Capital Corp.; Centrex Capital Automobile Assets, Inc.; Oxford Resources Corp.; NationsBank; Bank of America Texas, N.A., and Bank of America Corporation, Appellees**

## FROM THE DISTRICT COURT OF BELL COUNTY, 146TH JUDICIAL DISTRICT NO. 176,327-B, HONORABLE RICK MORRIS, JUDGE PRESIDING

Appellant Roy D. Foster appeals the trial court=s order granting summary judgment in favor of appellees Centrex Capital Corp., Centrex Capital Automobile Assets, Inc., Oxford Resources Corp., NationsBank, Bank of America, Texas, N.A., and Bank of America Corporation (collectively ABank of America@). Foster claims that he was overcharged by Bank of America when he elected to prepay the balance on a retail installment contract he signed to finance a used car. Specifically, Foster contends that Bank of America charged him a $25 fee which was not authorized by the terms of the contract. Foster sued for breach of contract. Bank of America moved for both no-evidence and traditional summary judgments, asserting that the fee was authorized by statute and that, in any event, Foster had no evidence of damages because the total payoff amount was less than he would have paid under the statutory default

provision.  *See* Tex. R. Civ. P. 166a(a), (c), (i).  The trial court denied appellees=no-evidence motion but granted the traditional summary judgment motion.  We will affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

On August 16, 1997, Foster bought a 1995 Cadillac Seville from Cleo Bay Used Cars and signed a retail installment contract.  All retail installment transactions are governed by chapter 348 of the Texas finance code (Motor Vehicle Installment Sales).  *See* Tex. Fin. Code Ann. ' 348.007 (West 1998).  A retail installment transaction occurs when a retail buyer purchases a motor vehicle from a retail seller (other than for resale purposes) and agrees with the retail seller to pay part or all of the cash price in one or more deferred installments.  *Id.* ' 348.001(7).  A retail installment contract is an instrument that evidences such a transaction.  *Id.* ' 348.001(6).  The terms of a retail installment contract are determined by calculating a Atime price differential@ component in addition to the principal balance owed for the vehicle.  The time price differential is added to the principal to determine the total amount of the retail buyer=s indebtedness under a retail installment contract.  *Id.* ' 348.001(9).

The code specifies several methodologies to calculate the rate or amount of the time price differential.  *Id.* ' 348.103.  Section 348.103 states that a retail installment contract can provide for any amount of time price differential permitted under section 348.104, .105, or .106, or any rate of time price differential that does not exceed a yield permitted under those three sections.  *Id.*  Alternatively, a chapter 348 retail installment contract may also provide for a time price differential according to the ceilings set out in chapter 303 (Optional Rate Ceilings).  *See id.* ' 303.001 (West Supp. 2002).  Section 303.001 provides that a contract that is subject to chapter 348 Amay, as an alternative to an interest rate or amount

2

of time price differential allowed under that chapter, provide for a simple or precomputed rate or amount of time price differential that does not exceed the applicable ceiling provided by this chapter or by the equivalent yield authorized by Chapter . . . 348.@ *Id.* ' 303.001(b).[1]

A retail buyer has the option to prepay a retail installment contract in full at any time before maturity. *Id.* ' 348.118 (West 1998). If a buyer prepays in full or if the holder of the contract demands payment of the unpaid balance of the contract in full before the contract=s final installment is due, the buyer is entitled to receive a refund credit of a portion of the finance charges. *Id.* ' 348.119. Section 348.119 further provides that a buyer is entitled to a refund credit as provided by section 348.120 or 348.121, Aas applicable.@ *Id.* **Section 348.120 applies to refund credits upon the prepayment of a retail installment contracts payable in Asubstantially equal successive monthly installments beginning one month after the date of the contract.@ *Id.* ' 348.120(a). Section 348.121 applies to all other retail installment contracts.** *Id.* **' 348.121;** *see also id.* **' 348.119.**

---

[1] The parties= arguments seem to assume that all motor vehicle retail installment contracts calculate the time price differential either by a simple interest or a precomputed formula. As the above discussion makes clear, the finance code does not confine the universe of time price differential contracts to only those with a simple interest or precomputed rate.

The retail installment contract Foster signed indicates that he financed an amount totaling $22,340.66, for which he agreed to pay a time price differential of $8,259.34. The contract lists $30,600.00 as the total amount of payments to be paid in seventy-two monthly installments of $425.00. After making scheduled payments for over a year, Foster decided to prepay the balance of the contract in late 1998 or early 1999. **In calculating the refund credit under section 348.120, the statute directs the holder to subtract from the original time price differential an acquisition cost of $25, and then multiply the remaining amount by Athe percentage of refund computed under subsection (d).@** *See id.* **' 348.120(b).**[2] At the time of prepayment, Foster=s contract had been assigned by the seller to Bank of America, which calculated the payoff amount to be $18,411.22. According to Exhibit No. 2-2 of appellee=s motion for summary judgment, this payoff included a $25 fee.[3]

Foster filed suit against the appellees for breach of contract, alleging that Bank of America included in the final payoff amount a $25 acquisition fee not contracted for by the parties.[4] Foster=s first amended original petition also included claims for breach of contract and fraud based on the method in

---

[2] **Because Foster=s contract falls within the provisions of section 348.120, section 348.121 has no application to this case.**

[3] The exhibit describes the $25 fee as a Aprepay penalty.@ The term, Aprepayment penalty,@ is defined in section 301.002(a)(15) of the finance code. Tex. Fin. Code Ann. ' 301.002(a)(15) (West Supp. 2002). However, the parties refer to this fee in their pleadings as an Aacquisition fee@ or Aacquisition charge.@ *See* Tex. Fin. Code Ann. ' 348.120(b)(1) (West 1998). Because neither party challenges the fact that the $25 Aprepay penalty@ is an Aacquisition cost@ charge, we will assume that it is in fact an Aacquisition cost@ as referenced in the statute.

[4] Foster brought this action as a class action pursuant to rule 42 of the Texas Rules of Civil Procedure. The record does not indicate that a class has been certified. In any event, the issue is not before us.

4

which the finance charge was calculated: AThe Contract entered into by Plaintiff provided that interest was to be calculated using simple interest. Defendants violated the terms of the Contract by utilizing a different interest calculation that effectively gave them a higher rate of interest and a greater return than the rate contracted for between the parties.@ Foster further asserted that the retail installment contract that he signed was a simple interest contract.

Bank of America disputed this assertion and contended that the contract provided for a precomputed rate. Bank of America moved for summary judgment on both traditional and no-evidence grounds. Bank of America contended that Foster=s contract did not call for the finance charges to be calculated by a simple interest method, and additionally, it produced evidence that indicated that the payoff amount it quoted to Foster resulted in a lower payoff amount than that advocated by Foster, *i.e.*, the simple interest method. Accordingly, Bank of America asserted, Foster had presented no evidence of damages. The motion also asserted that there was no breach of contract because the $25 acquisition fee is specifically authorized in a monthly retail installment transaction by section 348.120 of the finance code. Alternatively, Bank of America asserted that any damages surrounding the allegedly improper fee, if proven, would be *de minimis*.

After Bank of America filed its motion for summary judgment, Foster again amended his original petition, dropping his claim based on Bank of America=s alleged use of an improper interest rate calculation to arrive at the payoff amount. Foster filed its response to the appellee=s summary judgment motion in which he argued that the finance code does not authorize the $25 acquisition fee in this case. He

also asserted that his damages were not *de minimis* but did not otherwise respond to Bank of America=s assertion that there was no evidence of damages.

The trial court denied Bank of America=s Ano-evidence@ motion but granted its traditional summary judgment motion on the ground that the finance code provided for a $25 acquisition fee to be charged in this transaction. After Foster=s motion for new trial was overruled by operation of law, he filed a notice of appeal. Bank of America urges that the judgment be affirmed on the ground specified, or in the alternative, it raises cross-points requesting that the judgment be affirmed on other grounds raised in the motion.

## DISCUSSION

### *Standard of Review*

Because the propriety of a summary judgment is a question of law, we review the trial court=s decision *de novo*. *Natividad v. Alexsis, Inc.*, **875 S.W.2d 695, 699 (Tex. 1994);** *Texas Dep=t of Ins. v. American Home Assurance Co.*, **998 S.W.2d 344, 347 (Tex. App.C Austin 1999, no pet.). The standards for review of a traditional summary judgment are well-established: (1) the movant must show there is no genuine issue of material fact and that it is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, the court must take evidence favorable to the nonmovant as true; and (3) the court must indulge every reasonable inference in favor of the nonmovant and resolve any doubts in the nonmovant=s favor.** *Nixon v. Mr. Prop. Mgmt. Co.*, **690 S.W.2d 546, 548-49 (Tex. 1985). A defendant who moves for traditional summary judgment has the burden of disproving one**

essential element of each pleaded cause of action or showing that the plaintiff cannot succeed on any theory pleaded. *See San Antonio Express News v. Dracos*, 922 S.W.2d 242, 247 (Tex. App.C San Antonio 1996, no writ). Where, as here, the trial court specified the grounds on which it was basing its decision for summary judgment, we must review the grounds on which the trial court ruled, whether granted or denied, and which are dispositive of the appeal. *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 625-26 (Tex. 1996); *Baker Hughes, Inc. v. Keco R.&D., Inc.*, 12 S.W.3d 1, 5 (Tex. 1999).

On a suit for breach of contract, the plaintiff has the burden to prove (1) the existence of a valid contract, (2) performance by the plaintiff, (3) breach of the contract by the defendant, and (4) damages sustained by the plaintiff as a result of the breach. *Scott v. Sebree,* 986 S.W.2d 364, 372 (Tex. App.C Austin 1999, pet. denied). **In its motion for summary judgment, Bank of America asserted that there was no evidence of breach of contract because chapter 348 of the finance code, which applies to all motor vehicle retail installment contracts, authorizes a $25 acquisition fee to be charged in connection with calculating a refund credit when a buyer elects to prepay a retail installment contract.** *See* **Tex. Fin. Code Ann.** **' ' 348.119-121.**

**The order granting summary judgment recites several A findings@ of the trial court, including a finding by the court that Foster=s contract was a simple interest contract and was not a precomputed contract. The court further found that A the transaction at issue did not call for a refund credit on the retail installment contract@ but that section 348.120 nonetheless applied A by analogy.@ Foster challenges this latter finding on appeal. Foster asserts that section 348.120**

7

**applies only to retail installment contracts in which the time price differential is calculated on a precomputed basis; therefore, when the court found that his contract** was a simple interest contract that did not call for a refund credit, it should not have applied section 348.120.  Moreover, Foster contends, by applying the statute by analogy to a non-refund transaction, the court judicially amended the statute.

**Foster=s argument hinges on his assertion, and the trial court=s purported finding, that the contract was not a precomputed transaction and hence did not call for a refund of finance charges.  Findings recited in a judgment, however, do not establish an issue on appeal.  The Texas Rules of Civil Procedure mandate that findings of fact be separately filed and not recited in a judgment.**  *See* **Tex. R. Civ. P. 299a;**  *Frommer v. Frommer*, **981 S.W.2d 811, 814 (Tex. App.C Houston [1st Dist.] 1998, pet. dism=d) (findings of fact and conclusions of law recited in the judgment cannot form the basis of a claim on appeal).  Moreover, findings of fact are inappropriate after a trial court renders a summary judgment.**  *See IKB Indus. v. Pro-Line Corp.*, **938 S.W.2d 440, 441 (Tex. 1997);**  *Linwood v. NCNB Tex.*, **885 S.W.2d 102, 103 (Tex. 1994).  Therefore, we do not consider the trial court=s findings in our review.**

Foster contends that a Arefund@ of finance charge is inapposite to a contract in which the time price differential is calculated by the simple interest method.  Moreover, Foster asserts that the method set out in section 348.120 to determine the amount of refund credit presupposes a precomputed transaction.  In support of his argument, Foster cites an interpretive letter from the Office of Consumer Credit Commissioner.  **Foster urges this Court to determine that the retail installment contract at**

8

**issue called for the time price differential to be calculated on a simple interest basis.** Bank of America responds that the statute is unambiguous in its express application to all retail installment contracts and that even though its position is that the contract calculated the time price differential on a precomputed basis, the fee would have been authorized even if the contract had used a simple interest formula.

**When the trial court considered and ruled on Bank of America=s motion for summary judgment, Foster had waived his claims that Bank of America had calculated the time price differential by the wrong methodology. What was at issue is whether section 348.119 (ARefund Credit on Prepayment@) operates to entitle Foster to a refund, and if so, whether section 348.120 (AAmount of Refund Credit for Monthly Installment Contract@) authorizes Bank of America to assess a $25 acquisition fee.** *See* **Tex. Fin. Code Ann. '' 348.119, .120. No party contests the fact that Foster prepaid his motor vehicle retail installment contract. The essence of Foster=s argument is that his contract did not obligate him to pay a pre-determined amount of finance charges; instead, he asserts that under his contract, finance charges accrued by a simple interest method, by which the charges were not pre-determined but rather accrued on a daily basis on the outstanding balance over the life of the contract. Therefore, Foster concludes, the prepayment of his contract did not require that any finance charges be refunded. The evidence in the record belies Foster=s contentions.**

**The face of the contract states finance charges in the amount of $8259.34, which represent the total charges over the seventy-two month period of scheduled payments. Indeed, the contract clearly states that this is A[t]he dollar amount the credit will cost you.@ The contract**

also shows that the $8259.34 was added to the Aamount financed@of $22,340.66. The combined amount of $30,600 is listed as the Atotal of payments,@and the contract explains that this sum represents the Aamount you will have paid when you have made all scheduled payments.@ Foster characterizes the $8259.34 amount as a mere Aestimate@that is required to be disclosed and points to a section of the contract labeled Apromise to pay and payment terms,@which he asserts proves that the transaction was a simple interest contract. That section of the contract states that Foster promises to pay Athe principal amount of $22,340.66, plus finance charges accruing on the unpaid balance at the rate of 10.98% per year from today=s date until maturity.@ It also states that finance charges accrue on a 365 day basis. Foster asserts that these provisions are consistent with a simple interest transaction in which interest accrues on the outstanding balance on a daily basis. Bank of America responds that the provision merely Asets out the method by which the finance charge was calculated@and that the transaction was nonetheless structured as a transaction in which Foster agreed to pay a pre-determined amount of finance charges as part of the contract. Based on the contract and the evidence in the record, we agree with Bank of America that section 348.119, and hence, section 348.120 apply to this transaction.

With its motion for summary judgment, Bank of America provided evidence that included an affidavit from the Vice President of Bank of America and the company=s records that were maintained in connection with Foster=s retail installment contract, plus a copy of the contract. The records indicate that although Foster would have paid finance charges in the amount of $8259.34 had he continued to make scheduled payments for the full seventy-two month

10

period, he received a Arebate@ of part of this amount when he elected to pay the outstanding balance on the loan early. The payoff amount that Bank of America quoted to Foster, moreover, also indicates that Foster received a refund of part of the pre-determined finance charges. Foster=s response to Bank of America=s motion for summary judgment did not controvert this evidence.[5]

---

[5] There may be situations such as those described by Foster in which the finance charge is not added to the amount financed at the time the contract is formed but rather accrues during the contract; in such a situation, no Arefund@ of finance charge will be necessary. That is not this transaction.

When a buyer prepays a motor vehicle retail installment contract, section 348.119 and either section 348.120 or section 348.121 are triggered. *See* Tex. Fin. Code Ann. ' 348.119 (West 1998). For a contract such as Foster=s, *i.e.*, one that called for payment in equal monthly installments, section 348.120 both establishes a means of calculating a refund credit and authorizes the creditor to assess a $25 acquisition fee. *Id.* ' 348.120. That Foster=s retail installment contract did not include a provision regarding an acquisition fee in the event of prepayment is no matter. Foster=s contract includes a notice regarding Foster=s right Aunder the law@ to prepay the contract and to obtain a partial refund of the finance charge Aunder certain conditions.@[6] Under the finance code, a retail buyer has the right to prepay a retail installment contract in full at any time before maturity. *Id.* ' 348.118. In addition, the finance code entitles the buyer to a refund credit upon prepayment. *Id.* ' 348.119. While Foster=s contract is consistent with the provisions of the finance code, it merely referenced his Alegal rights@ and did not specifically address the amount or means of calculating the refund credit to which Foster was entitled. Section 348.120 provides a means of calculating the refund credit and authorizes the

---

[6] The contract Foster signed includes a ANotice to Buyer@ statement above the signature line which reads as follows:

> DO NOT SIGN THIS CONTRACT BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES. YOU ARE ENTITLED TO A COPY OF THE CONTRACT YOU SIGN. UNDER THE LAW YOU HAVE THE RIGHT TO PAY OFF IN ADVANCE THE FULL AMOUNT DUE AND UNDER CERTAIN CONDITIONS MAY OBTAIN A PARTIAL REFUND OF THE FINANCE CHARGE. KEEP THIS CONTRACT TO PROTECT YOUR LEGAL RIGHTS.

**creditor to assess a $25 fee against the credit. Because the statute authorized the bank to charge this fee in calculating the refund credit, and because nothing in the contract is contrary to the provisions of section 348.120, Bank of America did not breach its contract with Foster. Accordingly, we overrule Foster=s issue on appeal and affirm the grant of summary judgment. Because of our resolution of this issue, we need not reach appellee=s cross-points.**

## CONCLUSION

Foster was entitled to a refund credit when he chose to pay the balance of his retail installment contract earlier than anticipated in the agreement. Section 348.119 authorizes that a buyer receive a refund credit and section 348.120 establishes a methodology by which to calculate the minimum credit amount on a monthly motor vehicle retail installment contract. In computing the amount of the credit, moreover, section 348.120 authorizes the creditor to assess a $25 acquisition fee. Therefore, we affirm the summary judgment granted in favor of Bank of America.


Bea Ann Smith, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Yeakel

Affirmed

Filed:　June 6, 2002

Publish