# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---
### NO. 03-09-00265-CV
---

**Dial Thru International Corporation n/k/a Rapid Link; and Canmax Retail Systems, Inc., Appellants**

**v.**

**Affiliated Computer Services, Inc., Appellee**

---
### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT NO. D-1-GV-05-003670, HONORABLE SCOTT H. JENKINS, JUDGE PRESIDING
---

### M E M O R A N D U M   O P I N I O N

Appellant Dial Thru International Corporation ("Dial Thru"), acting as assignee of appellant Canmax Retail Systems, Inc. ("Canmax"), filed suit against appellee Affiliated Computer Services, Inc. ("ACS") for breach of contract. Dial Thru alleges that ACS is responsible for certain tax liabilities of Canmax pursuant to an agreement under which ACS purchased certain assets of Canmax. ACS filed a motion for summary judgment contesting such responsibility as a matter of law. The district court granted ACS's motion and entered a take-nothing judgment against Dial Thru. We affirm.

### *Background*

ACS entered into an asset purchase agreement (the "Agreement") with Canmax and its parent company Canmax Inc.—the predecessor in interest to Dial Thru—on September 3, 1998. Under the Agreement, Canmax agreed to sell "substantially all" of its assets to ACS.

One of the assets ACS purchased was the right to service an existing contract between Canmax and Southland Corporation. In 2000, the Texas Comptroller of Public Accounts conducted a tax audit of Canmax for the period of February 1, 1995, to March 31, 1999. The Comptroller concluded that Canmax owed taxes to the State relating to the Southland contract in the amount of $545,304.28, as well as interest and penalties totaling $877,333.79.

The State filed suit against Dial Thru on August 5, 2005, seeking recovery of the delinquent taxes, interest, and penalties. Dial Thru, in turn, filed a third party action against ACS, alleging that ACS was liable for the tax delinquency in accordance with the terms of the Agreement. ACS sought summary judgment on Dial Thru's third party claim. On April 13, 2009, the district court granted ACS's motion for summary judgment and entered a take-nothing judgment in favor of ACS.[1] Dial Thru appeals.

*Analysis*

We review summary judgments de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). Under the standard applicable to a traditional motion for summary judgment, the motion should be granted only when the movant establishes that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. *See*

---

[1] ACS had filed a counterclaim against both Dial Thru and Canmax for indemnity for any sums found to be owed by ACS to the Comptroller with respect to the audit of Canmax, and Dial Thru had also filed a third party action against Southland. On May 22, 2008, the State nonsuited its causes of action against Dial Thru; on February 26, 2009, Dial Thru nonsuited its third party claim against Southland, apparently due to a settlement agreement; and on April 13, 2009, ACS nonsuited its counterclaim in anticipation of the district court's granting its motion for summary judgment. Thus, the district court's order on ACS's motion for summary judgment disposed of all remaining claims and became final.

Tex. R. Civ. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). In reviewing a motion for summary judgment, we accept as true all evidence favorable to the non-movant, making every reasonable inference and resolving all doubts in the non-movant's favor. *See Nixon*, 690 S.W.2d at 548-49.

ACS based its motion for summary judgment on the argument that the tax liability resulting from the Comptroller's audit was not included in the liabilities assumed by ACS under the Agreement. Regarding the assumption of liabilities, the Agreement provides as follows:

> 1.3 <u>Assumed Liabilities</u>. At Closing, [ACS] shall deliver to [Canmax] an Assumption Agreement . . . pursuant to which [ACS] shall assume, pay, perform and discharge (when and as they become due) the following liabilities (collectively, the "Assumed Liabilities"):
>
> > (a) all liabilities and obligations of [Canmax] that accrue, become owing or arise on or after the Closing Date under the Assumed Contracts;
> >
> > . . . .
>
> 1.4 <u>Liabilities Not Being Assumed</u>. [ACS] shall not assume or be responsible for any of the following liabilities or obligations of [Canmax] (collectively, the "Excluded Liabilities"):
>
> > . . . .
> >
> > (c) except to the extent included as an Assumed Liability (and explicitly identified) pursuant to <u>Section 1.3(d)</u>, any liability or obligation of [Canmax] for federal, state, local or foreign taxes associated with the Assets or the Business for any period prior to the Closing Date; [and]
> >
> > . . . .
> >
> > (j) all other liabilities, whether known, unknown, contingent or fixed of [Canmax] which are not specifically listed in <u>Section 1.3</u> above.

3

ACS relies on section 1.4(c) of the Agreement. It is undisputed that the tax liability at issue here is not included or identified in section 1.3(d) of the Agreement, is associated with the transferred assets, and is for a period prior to the Agreement's closing date. Therefore, in accordance with section 1.4 of the Agreement, ACS did not assume and is not responsible for the tax liability.[2]

Dial Thru, however, relies on section 1.3(a) of the Agreement. While section 1.4 sets out the "Excluded Liabilities," section 1.3 sets out the "Assumed Liabilities" for which ACS is responsible to "pay, perform and discharge." Section 1.3(a) includes in the assumed liabilities those that "accrue, become owing or arise on or after the Closing Date under the Assumed Contracts." Dial Thru contends that the tax liability is an "Assumed Liability" in accordance with section 1.3(a), and that if it is also an "Excluded Liability" in accordance with section 1.4(c), the Agreement is ambiguous and summary judgment is improper.

However, even if Dial Thru is correct that the tax liability became owing under the assumed contracts after the closing date and, therefore, falls within the scope of section 1.3(a), we find that the only reasonable interpretation of the Agreement is that the terms of section 1.4 supersede the terms of section 1.3. "If the written instrument is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe the contract as a matter of law." *Coker v. Coker*, 650 S.W.2d 391, 393-94 (Tex. 1983). It

---

[2] As an alternative basis for summary judgment, ACS argued that Dial Thru could not sue for indemnification under the Agreement because Dial Thru was neither the corporate successor of Canmax nor an assignee of Canmax's rights. Because we affirm the district court's judgment based on the tax liability not being ACS's assumed liability under the Agreement, we need not address such alternative basis. *See Pickett v. Texas Mut. Ins. Co.*, 239 S.W.3d 826, 840 (Tex. App.—Austin 2007, no pet.) ("We must affirm the summary judgment if any of the grounds presented to the district court are meritorious.").

4

is noteworthy that section 1.4(c) specifically excepts the assumed liabilities set out in subsection (d) of section 1.3. By specifically excepting only subsection (d), section 1.4(c) indicates that the other subsections of section 1.3—including subsection (a)—are *not* excepted from section 1.4(c)'s coverage. If section 1.3 were instead intended to supersede section 1.4, such language in section 1.4(c) would be incomplete and unnecessary. It is also noteworthy that subsection (j) of section 1.4 identifies as excluded liabilities "all other liabilities . . . of [Canmax] which are not specifically listed in Section 1.3." If section 1.3 superseded section 1.4, subsection (j) would make subsections (a) through (i) of section 1.4 superfluous. In contrast, by construing the Agreement such that the exclusions in section 1.4 supersede the inclusions in section 1.3, all the provisions of section 1.4 have meaning. Liabilities that might otherwise be assumed liabilities in accordance with section 1.3 are instead excluded liabilities to the extent they are specifically included in subsections 1.4(a) through (i), and any liability not included within section 1.3's assumed liabilities are excluded liabilities regardless whether they are covered by subsections 1.4(a) through (i).[3]

Dial Thru also argues that ACS waived its argument that it is not responsible for the tax liability under the Agreement. First, Dial Thru refers to the Comptroller's assessment of taxes against ACS for the same transactions and audit period at issue here, and ACS's settlement of such claim for $275,000. The elements of waiver include (1) an existing right, benefit, or advantage held by a party, (2) the party's actual knowledge of its existence, and (3) the party's actual intent to

---

[3] Dial Thru also refers to section 6.2 of the Agreement, which requires ACS to indemnify Canmax for ACS's failure to discharge any assumed liability. However, because we interpret the Agreement, as a matter of law, such that ACS did not assume any liabilities included in section 1.4, section 6.2 does not affect our analysis.

relinquish the right, or intentional conduct inconsistent with the right. *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 778 (Tex. 2008). ACS contends that its settlement with the Comptroller is not inconsistent with its construction of the Agreement. ACS alleges, and Dial Thru does not dispute, that the Comptroller's claim against ACS was based on ACS being the purchaser of Canmax's assets irrespective of the terms of the Agreement. *See* Tex. Tax Code Ann. § 111.020(a), (b) (West 2008). There is no evidence that the Comptroller's claim against ACS was in any way based on the Agreement's assumption-of-liability provisions. Therefore, even if by settling with the Comptroller ACS has waived any argument that it is not liable to the Comptroller under the tax code, ACS has not thereby waived its argument that it is not liable under the terms of the Agreement.

Next, Dial Thru argues waiver based on the assertion that the tax liability is not an assumed liability under the Agreement being an affirmative defense and ACS's making only a general denial in its pleadings. *See* Tex. R. Civ. P. 94; *Shoemake v. Fogel, Ltd.*, 826 S.W.2d 933, 937 (Tex. 1992) ("Generally, an affirmative defense is waived if it is not pleaded."). However, as the plaintiff asserting a breach of contract claim, Dial Thru has the burden to prove that ACS breached the Agreement. *See Foster v. Centrex Capital Corp.*, 80 S.W.3d 140, 143-44 (Tex. App.—Austin 2002, pet. denied). To satisfy its burden, Dial Thru had to show that the tax liability was among ACS's assumed liabilities under the Agreement. Dial Thru cites no authority for the proposition that an assertion that an asset purchase agreement excludes the liability at issue among those assumed by the buyer constitutes an affirmative defense. *See Carbona v. CH Med., Inc.*, 266 S.W.3d 675, 679-81 (Tex. App.—Dallas 2008, no pet.). Instead, Dial Thru relies on cases in which a defendant sought to avoid its responsibility under an agreement based on the agreement's

6

limitation of liability provision, *see, e.g.*, *Continental Holdings, Ltd. v. Leahy*, 132 S.W.3d 471, 475 (Tex. App.—Eastland 2003, no pet.), or based on the other party's negligence, *see, e.g.*, *Delta Eng'g Corp. v. Warren Petroleum, Inc.*, 668 S.W.2d 770, 772-73 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). Unlike those cases, ACS's assertion that the tax liability is excluded from its assumed liabilities tends to directly rebut Dial Thru's factual assertions. *See Gorman v. Life Ins. Co.*, 811 S.W.2d 542, 546 (Tex. 1991) ("Pleading an affirmative defense . . . seeks to establish an independent reason why the plaintiff should not recover."). ACS was not, therefore, required to affirmatively plead its defense.

We affirm the judgment of the district court.

_____

G. Alan Waldrop, Justice

Before Chief Justice Jones, Justices Waldrop and Henson

Affirmed

Filed:  August 3, 2010

7