

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-11-00418-CV

JASMINE MONTGOMERY                                    APPELLANT

V.

WANDA MATTUCCI                                          APPELLEE

----------

## FROM THE 431ST DISTRICT COURT OF DENTON COUNTY

----------

## MEMORANDUM OPINION[1]

----------

Jasmine Montgomery appeals from a final summary judgment for Wanda Mattucci. In six issues, Montgomery contends that the trial court imposed death penalty sanctions against her, that those sanctions were excessive, that the trial court did not first test lesser sanctions, that the trial court's imposition of such sanctions violated her due process rights, that she was not the offending party, and that the trial court should have awarded her sanctions against Mattucci and

---

[1]See Tex. R. App. P. 47.4.

Mattucci's attorneys. We modify the trial court's judgment in part and affirm it as modified.

## Procedural Background

Montgomery sued Mattucci in December 2009 alleging personal injury damages from a car wreck and asserting negligence, negligence per se, and gross negligence claims. Montgomery also filed an affidavit of indigency, seeking to proceed without prepayment of costs, which the trial court denied. Montgomery's counsel, Sonya Chandler-Anderson, nevertheless set the matter for a hearing. Mattucci's counsel, Heidi Whitaker, filed a "special appearance," in which Mattucci—who had not yet been served with citation but to whom Chandler-Anderson had been sending documents filed in the case—attempted to challenge Montgomery's indigency claim without making a general appearance and, thus, waiving citation. At the hearing, Chandler-Anderson referred to Whitaker as "opposing counsel." The trial judge again denied Montgomery's attempt to proceed as an indigent. Both Whitaker and Chandler-Anderson signed the order denying indigency as to form. Montgomery appealed the ruling to this court, and we dismissed the appeal because of the nonappealable, interlocutory nature of the order. *Montgomery v. Matucci*, No. 02-10-00127-CV, 2010 WL 3075597, at *1 (Tex. App.—Fort Worth Aug. 5, 2010, no pet.) (mem. op.).

After this court issued its mandate in the indigency appeal, Chandler-Anderson attempted to set yet another hearing in the trial court on the affidavit of

indigency, but neither she nor Montgomery appeared.[2] Montgomery then filed in the trial court another motion to reconsider the indigency ruling. The certificate of service states that the document was sent to "Mattucci by and through her attorney of record, . . . Whitaker." Whitaker filed another "special appearance" on Mattucci's behalf, making the same challenge to the indigency claim but also contending that Montgomery's suit was frivolous under chapter 13 of the civil practice and remedies code. *See* Tex. Civ. Prac. & Rem. Code Ann. § 13.001 (West 2002). Whitaker also appeared at the hearing on Montgomery's motion to reconsider in an attempt to argue the special appearance. The trial court would not allow Whitaker to argue against indigency without making a general appearance; she said Mattucci had not authorized her to do so. The trial court nevertheless accepted the filing as an amicus brief. At the conclusion of the February 18, 2011 hearing, the trial court denied Montgomery's motion to reconsider.

Although Chandler-Anderson knew that Whitaker was representing Mattucci in the matter, after the February 2011 hearing, Chandler-Anderson began sending documents filed in the case—including discovery and a change of

---

[2]Substitute counsel for Mattucci appeared because Whitaker had a conflict. He told the trial court that Whitaker's firm had not received notice of the hearing date and that Whitaker had discovered it fortuitously by checking the docket settings.

address notice—directly to Mattucci.[3] Despite the fact that she had not yet been served with citation, Mattucci filed an answer in the suit on April 7, 2011. On April 22, 2011, Mattucci served discovery requests, including requests for admissions, on Montgomery; the certificate of service shows that they were mailed to the proper address for Chandler-Anderson, but the fax confirmation shows that they were sent to Chandler-Anderson's prior fax number.[4] When Whitaker contacted Chandler-Anderson by phone on May 2, 2011 to determine why Chandler-Anderson was sending documents directly to Mattucci,[5] she learned Chandler-Anderson's new contact information. Whitaker re-sent

---

[3]Although she had served Whitaker in January 2011 with her motion to reconsider, in a handwritten objection to the special appearance filed on the day of the February 18, 2011 hearing, Chandler-Anderson did not serve Whitaker with the objection and instead certified that "no other party has been served and is entitled to notice."

[4]Chandler-Anderson contends that she hand delivered a change of address, phone number, and fax number to Whitaker at the February 18, 2011 hearing, but Whitaker claims she never received it, noting that it was file-stamped after the hearing that day. Whitaker did say that she received a copy of the handwritten objection to special appearance filed that same day before the hearing began.

[5]Chandler-Anderson claimed in her response to Mattucci's motion for summary judgment that she had no notice that Whitaker was "officially" Mattucci's counsel until May 2, 2011. In later pleadings, Chandler-Anderson accused Whitaker of attacking her and accusing her of contacting Mattucci directly, to which Chandler-Anderson responded by "remind[ing] . . . Whitaker that . . . Mattucci was pro se and that . . . Whitaker could not proceed on this case until she had filed an appearance pursuant to the court[']s instruction." Chandler-Anderson's position was that all of the communications were properly sent to Mattucci—despite the fact that Chandler-Anderson had served at least one document on Whitaker before the February 2011 hearing—because "there was not [an] attorney of record recognized by the court on file for" Mattucci.

4

Mattucci's discovery requests, including the requests for admissions, via U.S. mail and fax. Chandler-Anderson claims she received a "courtesy copy" of the discovery by fax on May 5, 2011 and that she received the discovery by mail on May 6, 2011.

Mattucci moved for summary judgment in June 2011, contending that Montgomery had failed to timely respond to requests for admissions and that based on the deemed responses, Mattucci was entitled to summary judgment. The requests for admissions included the following:

- The attached Exhibit "A" is a true and correct copy of the police report filed by the investigating police officers regarding the accident the basis of this suit.

- Plaintiff Jasmine Montgomery had no injury caused by the accident.

- Plaintiff Jasmine Montgomery was found 100% at fault in the property damage subrogation.

- Plaintiff Jasmine Montgomery was noted as failing to yield the right of way on the police report.

- Plaintiff Jasmine Montgomery's claims are frivolous and without merit.

- Defendant Wanda Mattucci is entitled to summary judgment on all counts.

The attached police report, which listed Montgomery as driving unit 1, stated, "Unit 1 failed to yield the right of way to unit 2." Additionally, attached to the motion was a fax receipt showing that the discovery requests were faxed to Chandler-Anderson on May 2, 2011.

5

Mattucci filed a motion for sanctions two weeks after filing the motion for summary judgment. In it, she alleged that "[d]espite [Montgomery's] having filed several pleadings in this case starting on March 8, 2010, and several telephone conversations between Plaintiff's attorney and Defense Counsel, Plaintiff's attorney persists in directing pleadings, discovery and other communications to everyone but the Defense attorney of record," including Mattucci herself. According to the motion, this last direct contact with Mattucci was on May 1, 2011. Mattucci also alleged that Montgomery had answered requests for disclosures on May 9, 2011 but that she did not answer the request for admissions or other discovery until June 8, 2011; even then, she served only Mattucci's insurance carrier rather than her counsel. According to Mattucci, Chandler-Anderson had engaged in "a pattern of egregious and improper conduct." Mattucci also pointed out specific instances in which Montgomery answered discovery in ways directly contradictory to the allegations in her own petition.

Mattucci asked for (1) stipulations of certain facts, (2) a directive to Montgomery not to oppose her defenses of assumption of the risk and contributory negligence, (3) an order refusing to permit Montgomery to support gross negligence and negligence per se claims, (4) an order striking all or part of Montgomery's pleadings, (5) an order overruling all of Montgomery's objections to Mattucci's discovery requests, (6) an order deeming Mattucci's requests for admissions, (7) an order prohibiting Montgomery from propounding requests for

6

admissions on Mattucci and limiting other discovery to ten questions each, (8) an order requiring Montgomery to appear for deposition no later than September 15, 2011, and (9) a monetary penalty. The trial court set a hearing on the motion for July 15, 2011.

Chandler-Anderson filed an unverified motion for continuance, stating that she had two cases set in Harris County for the date of the sanctions hearing. The trial court denied this motion, but Whitaker nevertheless rescheduled the hearing until July 29, 2011 as a courtesy. On July 21, 2011, Chandler-Anderson filed another unverified motion for continuance, contending that due to an illness, her doctor had placed her on medical leave until August 9, 2011; she stated that she had sought another attorney to take over her other cases but not this one because of its then-current posture.[6] Mattucci opposed the motion, and the trial court denied it.

After a hearing on July 29, 2011, which Montgomery and Chandler-Anderson did not attend, the trial court granted Mattucci's sanctions motion in its entirety. The trial court made several stipulations of fact; estopped Montgomery

---

[6]At a later hearing regarding sanctions, Chandler-Anderson asserted to the trial court that her assistant attached a doctor's note to this motion; however, after the trial court told Chandler-Anderson that nothing was attached to the motion, she admitted that the note had not been attached due to a clerical error and offered to give her sworn testimony that she was out on medical leave. However, she also said that the reason her assistant could not attach a sworn affidavit was because Chandler-Anderson "was out." She also admitted that she was "ineffective and not properly prepared" that day and that she did not "know what's really going on with" Montgomery's file.

7

from adducing, entering, or otherwise developing any evidence or testimony opposing Mattucci's defenses of assumption of the risk and contributory negligence; estopped Montgomery from adducing, entering, or otherwise developing any evidence or testimony supporting her own claims of gross negligence and negligence per se; struck all claims in Montgomery's current or future pleadings related to property damage, gross negligence, and negligence per se; overruled all of Montgomery's objections to Mattucci's discovery requests; ordered Montgomery to respond to Mattucci's discovery requests within two weeks; deemed the requests for admissions admitted; prohibited Montgomery from propounding any requests for admissions on Mattucci; limited requests for production and interrogatories on Mattucci to ten or fewer requests; and ordered Montgomery to appear for an oral deposition in Denton County no later than September 15, 2011.

The trial court found as follows:

> [E]ach of the sanctions ordered below has a direct relationship to the offensive conduct and the sanctions are not excessive. The sanctions ordered are necessary to address Plaintiff's repeated patterns of conduct in failing to properly serve opposing counsel with documents and responses, in failing to sign discovery responses and requests, in setting hearings on motions before filing pleadings and pulling the same hearings without notice to opposing counsel, and in answering discovery in a manner inconsistent with documents and information already filed with the Court.

The trial court also ordered "Plaintiff" to pay $3,000 to Whitaker.

Montgomery filed a motion to reconsider. In it, she alleged that the court was showing favor to Whitaker by, for example, failing to send Chandler-

8

Anderson notice of the denial of her second motion for continuance, failing to grant it when over twenty other courts had granted similar requests, and hearing the July 29, 2011 hearing ex parte. Although she did not ask the trial court to withdraw the deemed admissions, she argued that she had timely responded to them. At a hearing on the motion to reconsider, the trial court gave Chandler-Anderson the option of leaving the sanctions order as-is or having a new sanctions hearing. She chose to have a new hearing, which was scheduled for October 10, 2011.

Before the October hearing, Montgomery filed a response to Mattucci's motion for summary judgment. In it, she contended that there was a genuine issue of material fact on the following issues:

- whether Mattucci failed to control her speed;

- whether Mattucci was operating her vehicle at a high rate of speed;

- whether Mattucci failed to keep a proper look out;

- whether Mattucci failed to operate her vehicle safely;

- whether Mattucci failed to timely assess traffic conditions;

- whether Mattucci failed to operate her vehicle in a safe and reasonable manner;

- whether Mattucci failed to take evasive action to avoid the collision;

- whether Mattucci failed to reduce her speed as warranted;

- whether Mattucci failed to avoid a preventable accident;

- whether Mattucci failed to timely assess traffic conditions; and/or

9

• whether Mattucci failed to act as a reasonable and prudent person would under the same or similar conditions, circumstances, or both.

Montgomery also contended that an adequate time for discovery had not passed, that she had timely responded to Mattucci's discovery within thirty days of May 5, 2011, that Whitaker had engaged in "malicious interference with the judicial process of" her claims by filing the motion for special appearance objecting to the indigency affidavit, and that Chandler-Anderson did not know that Mattucci was represented by an attorney in the matter until May 2, 2011.

On September 22, 2011, Montgomery filed a motion for sanctions in which she alleged that Mattucci's special appearance objecting to her affidavit of indigence was a "false pleading" and that Chandler-Anderson had never received a copy of it from Whitaker.

At the second sanctions hearing in October 2011, Chandler-Anderson argued that the requests for admissions were mailed to Mattucci's insurance carrier rather than Whitaker as the result of a clerical error. However, the trial court noted that despite knowing this for three and one-half months, Chandler-Anderson had nevertheless failed to send the discovery directly to Whitaker. The trial court reiterated its sanctions order against Montgomery, increasing the monetary award to $6,000, and denied Montgomery's motion for sanctions against Whitaker. Additionally, the trial court granted Mattucci's motion for summary judgment.

10

**Nonmonetary Sanctions Against Montgomery**

In her first three issues, Montgomery contends that the trial court abused its discretion by imposing excessive, death penalty sanctions against her without first testing the efficacy of lesser sanctions. Although Montgomery does not directly challenge the summary judgment, one of her arguments under these three issues is that the trial court should have withdrawn the deemed admissions.

Montgomery acknowledges that the summary judgment hinged on the deemed admissions and that if the trial court was correct in concluding that the admissions were deemed, then the summary judgment was proper. However, she contends that a "harmless" clerical error should not prevent her from pursuing her claims.

**Applicable Law**

Rule 198.2 provides that "[t]he responding party must serve a written response [to requests for admissions] on the requesting party within 30 days after service of the request." Tex. R. Civ. P. 198.2(a). If a response is not timely served, the request is considered admitted without the necessity of a court order. Tex. R. Civ. P. 198.2(c). Matters deemed admitted under the rule are conclusively established as to the party making the admission unless the court permits the party to withdraw or amend the admission. Tex. R. Civ. P. 198.3. The court may allow a party to withdraw deemed admissions if the party

> shows good cause for the withdrawal or amendment . . . and . . . the court finds that the parties relying upon the responses and deemed admissions will not be unduly prejudiced and that the presentation of

11

the merits of the action will be subserved by permitting the party to amend or withdraw the admission.

*Id.*

The Texas Supreme Court has held as follows:

Requests for admission are intended to simplify trials. They are useful when "addressing uncontroverted matters or evidentiary ones like the authenticity or admissibility of documents." . . . .

As we have previously observed, requests for admission should be used as "a tool, not a trapdoor." And when admissions are deemed as a discovery sanction to preclude a presentation of the merits, they implicate the same due process concerns as other case-ending discovery sanctions. Thus, in *Wheeler* we required a showing of "flagrant bad faith or callous disregard for the rules" to substantiate a summary judgment based solely on deemed admissions.

. . . .

In *Wheeler,* we described the requisite demonstration of good cause and undue prejudice. Good cause, we said, "is established by showing the failure involved was an accident or mistake, not intentional or the result of conscious indifference." Undue prejudice we found to depend "on whether withdrawing an admission or filing a late response will delay trial or significantly hamper the opposing party's ability to prepare for it."

*Marino v. King*, 355 S.W.3d 629, 632–33 (Tex. 2011) (citations omitted); *see also*

*TransAm. Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 918 (Tex. 1991) (orig.

proceeding) ("Sanctions which are so severe as to preclude presentation of the

merits of the case should not be assessed absent a party's flagrant bad faith or

counsel's callous disregard for the responsibilities of discovery under the rules.").

12

**Discussion**

Here, even a cursory review of the record reveals actions by Chandler-Anderson that indicate, at the worst, a lack of candor with the court and Whitaker or, at the very least, a lack of familiarity with the case, extreme disorganization, and a lack of awareness of procedural rules so as to amount to "flagrant bad faith or . . . callous disregard for the responsibilities of discovery under the rules."

Chandler-Anderson, who is also Montgomery's mother, spent over a year attempting to prove Montgomery's indigency status, despite the trial court's having denied the right to proceed without prepayment of filing fees at least three times. Before the February 2011 indigency hearing, Chandler-Anderson sent the Denton County district clerk a letter stating that she was "alarmed and concern[ed]" that the clerk had not sent the citation "last year." Although counsel criticized the district clerk for not doing so, counsel showed a lack of diligence in monitoring the status of the case. *Cf. Boyattia v. Hinojosa*, 18 S.W.3d 729, 734 (Tex. App.—Dallas 2000, pet. denied) (holding, in context of limitations determination, that counsel's failure to act during three-month time period following clerk's failure to issue citation showed lack of diligence as a matter of law).

Although Whitaker had represented Mattucci in matters related to Montgomery's claim since at least March 2010 (and—as evidenced by the certificate of service on her January 2011 motion to reconsider—Chandler-Anderson was well aware of such representation), Chandler-Anderson began

13

serving documents after the February 2011 hearing directly on Mattucci. Her argument that Mattucci was pro se after that hearing because Whitaker declined to make a general appearance for Mattucci (who had not been served, which Chandler-Anderson also knew) is not well-taken. *See* Tex. R. Civ. P. 120 ("The defendant may, in person, or by attorney, or by his duly authorized agent, enter an appearance in open court. Such appearance shall be noted by the judge upon his docket and entered in the minutes, and shall have the same force and effect as if the citation had been duly issued and served as provided by law."); *see also* Tex. Disciplinary R. Prof'l Conduct 4.02(a) ("In representing a client, a lawyer shall not communicate or cause or encourage another to communicate about the subject of the representation with a person . . . the lawyer knows to be represented by another lawyer *regarding that subject*, unless the lawyer has the consent of the other lawyer or is authorized by law to do so." (emphasis added)).

Despite Whitaker attaching an electronic confirmation to Mattucci's motion for summary judgment showing that the requests for admissions and other discovery were sent to Chandler-Anderson's correct fax number at 9:59 a.m. on May 2, 2011, Chandler-Anderson persisted to state in responsive pleadings and arguments to the court that she did not receive the fax until May 5, 2011. She also continued to assert that the responses were timely when they were postmarked June 6, 2011 and mailed to Mattucci's insurance carrier rather than

14

Whitaker.[7]  Despite being informed via the motion for summary judgment and motion for sanctions filed in June 2011 that Whitaker had never received the answers to the requests for admissions from Chandler-Anderson, Chandler-Anderson never served her discovery responses on Whitaker and never explicitly asked the trial court to withdraw the deemed admissions.

During the second sanctions hearing, Chandler-Anderson represented to the trial court that although her assistant had inadvertently mailed the answers to the requests for admissions to Mattucci's insurance carrier, her assistant followed up by sending them to Whitaker; Chandler-Anderson claimed she had a certified mail receipt evidencing this follow-up mailing.  But the certified mail receipt Chandler-Anderson showed the trial court was for Montgomery's answers to requests for disclosures, which Chandler-Anderson sent on May 9, 2011.  When the trial court asked for a cover letter to show what was sent, Chandler-Anderson provided a cover letter for the responses to the requests for disclosures.  The trial court finally pointed out that Chandler-Anderson had no evidence that she had ever followed up by mailing the answers to the requests for admissions to Whitaker, and Chandler-Anderson admitted there was no such evidence.  When she again stated, "I responded to the discovery requests sanctions," the trial court answered, "You keep saying that, but there's nothing in the world other

---

[7]Although the certificate of service on the response indicates that it was mailed June 5, 2011, one day late, the postmark on the envelope mailed to the insurance carrier shows that the response was mailed on June 6, 2011.

15

than you saying it that says you did. Your paperwork doesn't add up, your certificate of written discovery doesn't add up. It's never been filed. I can't just take your word for it."

Although having been given a second opportunity to defend the sanctions motion, Chandler-Anderson showed up at the hearing unprepared and disorganized, misrepresented to the trial court that she had served responses to the requests for admissions on Whitaker, and accused Whitaker of "lying" and "manipulating." She blamed her clerical assistant for the "disarray of [her] office," stated that she had not anticipated that she would have to appear with proof that she had sent the responses to Whitaker, and offered to answer the discovery "at this point in time." The trial court responded,

> [D]ating back to the motion for summary judgment three-and-a-half months ago, the accusation has been crystal clear that no discovery was ever propounded. So I don't know how you can stand here and say you didn't know this issue was going to come up today when looking at the June 14th motion for summary judgment, based upon alleged failures to respond to requests for disclosure [sic] and requests for admissions most importantly, that you didn't think that issue would come up. That's what all this is based upon.

Based on our review of the entire record, we conclude and hold that the trial court did not abuse its discretion by refusing to withdraw the deemed admissions. The record shows that Chandler-Anderson's failure to timely respond to the requests for admissions was part of a pattern of conduct that

16

showed flagrant bad faith and callous disregard for the rules of discovery[8] in a case in which the prospect of any recovery was dubious to begin with.[9] We overrule Montgomery's first through third issues.[10]

### Monetary Sanctions Against Montgomery

In her fourth and fifth issues, Montgomery contends that the trial court abused its discretion by imposing sanctions directly against her rather than Chandler-Anderson. As with her first through third issues, to the extent she complains about sanctions affecting her ability to present her case, we need not

---

[8]The trial judge said on the record that he was granting the sanctions "because of the gross violations of the rules of professional conduct, the gross violation of the Rules of Civil Procedure, the gross violations of all local rules[,] and the comedic state that this case is in as a result of" Chandler-Anderson's deficiencies. In addition to the conduct evidenced in the appellate record, Chandler-Anderson's brief before this court is rife with typos—spelling and grammar errors—to the point that it is difficult to follow. Counsel's conduct in this appeal and in the underlying case is so concerning to this panel that we are referring the matter to the State Bar grievance committee. A copy of this opinion and the appellate record shall be sent to the Texas State Bar's Chief Disciplinary Counsel's Office. *See* Tex. Rules Disciplinary P. R. 5.02; *see also* Tex. Disciplinary R. Prof'l Conduct 1.01(a), 3.01, 3.02, 3.03, 3.04(c)(1)–(2), (5), 4.02(a), 5.03(a), 8.03(a).

[9]The evidence showed that the police report from the accident faulted Montgomery and that both parties' insurance carriers denied coverage, finding that Montgomery was responsible for the accident. In addition, Montgomery's pleadings themselves supported the conclusions in the police report.

[10]We need not address her issues to the extent they complain about death penalty sanctions under rule 215 because the summary judgment was based on the deemed admissions, not the rule 215 sanctions. *See* Tex. R. App. P. 47.1; *see also Alexander v. State*, No. 02-10-00302-CV, 2011 WL 3836452, at *4 (Tex. App.—Fort Worth Aug. 31, 2011, pet. denied) (mem. op.) (noting that "deemed admissions are the consequence of missing a procedural deadline, not a sanction for discovery abuse").

17

address them. *See* Tex. R. App. P. 47.1. However, to the extent she complains about the $6,000 monetary sanction, we address the issues.

Although at the second sanctions hearing the trial court told Chandler-Anderson, "I'm still making up my mind about what figures I'm going to put in here to sanction *you*," the sanctions order states, "*Plaintiff* is ORDERED to pay monetary sanctions in the amount of $6,000.00 to Defense Counsel." [Emphasis added.]

The trial court must at least attempt to determine whether the offensive conduct is attributable only to counsel, only to the party, or to both. *TransAm. Natural Gas Corp.*, 811 S.W.2d at 917; *Richmond Condos. v. Skipworth Commercial Plumbing, Inc.*, 245 S.W.3d 646, 661 (Tex. App.—Fort Worth 2008, pet. denied) (op. on reh'g). A party must bear some responsibility for its counsel's discovery abuses when it is or should be aware of counsel's conduct and the violation of the discovery rules. *TransAm. Natural Gas Corp.*, 811 S.W.2d at 917; *Richmond Condos.*, 245 S.W.3d at 661. Ultimately, the sanction imposed by the trial court must relate directly to the abuse found. *TransAm. Natural Gas Corp.*, 811 S.W.2d at 917; *Richmond Condos.*, 245 S.W.3d at 661.

We have already discussed Chandler-Anderson's conduct issues. Although there is some evidence in the record that Montgomery worked for Chandler-Anderson—also her mother—as a legal assistant, there is nothing in the record showing that Montgomery herself worked on the case or that she was responsible for the discovery and clerical errors. The trial court's ire was clearly

18

directed at counsel's behavior, including her deficiencies in pleading, discovery, and her lack of candor with the court. Although possible, nothing in the record shows that Montgomery directed, approved, or was aware of counsel's deficiencies in this case. Because "a party should not be punished for counsel's conduct in which it is not implicated apart from having entrusted to counsel its legal representation," imposing this monetary sanction against Montgomery herself is an abuse of discretion. *See Richmond Condos.*, 245 S.W.3d at 661; *see also TransAm. Natural Gas Corp.*, 811 S.W.2d at 917. Accordingly, we conclude and hold that the trial court should not have ordered monetary sanctions against Montgomery rather than her counsel.

Mattucci argues that we should modify the judgment to impose the monetary sanctions against Chandler-Anderson because the trial court orally pronounced at the hearing that he intended to impose the monetary sanctions against Chandler-Anderson. But in a civil case, when oral pronouncements conflict with a written judgment, the written judgment prevails. *Seasha Pools, Inc. v. Hardister*, 391 S.W.3d 635, 640 (Tex. App.—Austin 2012, no pet.); *see Moore v. Jet Stream Invs., Ltd.*, 315 S.W.3d 195, 204 (Tex. App.—Texarkana 2010, pet. denied). Thus, we sustain Montgomery's fourth and fifth issues in part as to the $6,000 in monetary sanctions and will modify the trial court's judgment to delete the $6,000 in monetary sanctions.

**Sanctions Motion Against Whitaker**

In her sixth issue, Montgomery contends that the trial court abused its discretion by denying her motion for sanctions against Whitaker and two other lawyers in the same firm. Her main contention is that Whitaker filed the special appearance falsely and in bad faith because it was an inappropriate vehicle to challenge Montgomery's claim of indigency. Whitaker contends that her use of the term "special appearance" was simply a misnomer of pleadings and that there is no evidence her attempted challenge to the indigency affidavit on Mattucci's behalf was made in bad faith.

Rule 145(d) allows a defendant to challenge a plaintiff's attempt to proceed without prior payment of costs. Tex. R. Civ. P. 145(d). Because Mattucci had not yet been served with citation, Whitaker was attempting to lodge such a challenge while avoiding submitting her client to the jurisdiction of the court without proper service. *See* Tex. R. Civ. P. 120 ("The defendant may, in person, or by attorney, or by his duly authorized agent, enter an appearance in open court. Such appearance shall be noted by the judge upon his docket and entered in the minutes, and shall have the same force and effect as if the citation had been duly issued and served as provided by law."); *In re E.R.*, 385 S.W.3d 552, 563 (Tex. 2012) ("Personal jurisdiction, a vital component of a valid judgment, is dependent 'upon citation issued and served in a manner provided for by law.'" (quoting *Wilson v. Dunn*, 800 S.W.2d 833, 836 (Tex. 1990))). A special appearance, on the other hand, is "for the purpose of objecting to the

20

jurisdiction of the court over the person or property of the defendant on the ground that such party or property is not amenable to process issued by the courts of this State." Tex. R. Civ. P. 120a.

Although Whitaker urged her challenge as a special appearance, she was candid when the court asked what her purpose was in filing the document. She wanted to challenge Montgomery's attempt to proceed as an indigent without making an appearance in accordance with rule 120. She served the special appearance on Chandler-Anderson, who objected to it at the February 2011 hearing. Chandler-Anderson did not object to the trial court's allowing it to be filed as an amicus pleading. *See Young Chevrolet, Inc. v. Tex. Motor Vehicle Bd.*, 974 S.W.2d 906, 912 (Tex. App.—Austin 1998, pet. denied) (concluding that letters sent to trial court by several nonparty car dealers were not improper ex parte communications and were more in the nature of amicus curiae pleas). Moreover, nothing indicates that Whitaker was attempting to abuse the process or raise a frivolous challenge. We therefore conclude and hold that the trial court did not abuse its discretion by denying the motion for sanctions against Whitaker.

As to the other two lawyers, nothing in the record shows that they had any involvement in the case. Accordingly, the trial court did not abuse its discretion under the first prong of *TransAmerican*. *TransAm. Natural Gas Corp.*, 811 S.W.2d at 917. We overrule Montgomery's sixth and final issue.

## Conclusion

Having sustained Montgomery's fourth and fifth issues in part, we modify the trial court's judgment to delete the monetary sanctions award of $6,000. Having overruled the remainder of the issues, we affirm the trial court's judgment as modified.

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL:  LIVINGSTON, C.J.; DAUPHINOT and GARDNER, JJ.

DELIVERED:  May 23, 2013