

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-19-00016-CV

METROPOLITAN TELECOMMUNICATIONS
HOLDING COMPANY, Appellant

V.

GLENN HEGAR, COMPTROLLER OF PUBLIC ACCOUNTS
OF THE STATE OF TEXAS, AND KEN PAXTON,
ATTORNEY GENERAL OF THE STATE OF TEXAS, Appellees

On Appeal from the 250th District Court
Travis County, Texas
Trial Court No. D-1-GN-17-005706

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Justice Stevens

## MEMORANDUM OPINION

Metropolitan Telecommunications Holding Company (MetTel) appeals the trial court's take-nothing judgment in its suit to recover $77,353.70 in franchise taxes paid under protest to Glenn Hegar, Comptroller of Public Accounts of the State of Texas (Comptroller). The crux of this appeal turns on whether MetTel sells tangible personal property. If so, MetTel could deduct the cost of goods sold (COGS) from its taxable margin and should recover the franchise taxes paid under protest. If MetTel instead sells services, the take-nothing judgment in MetTel's suit against the Comptroller and Ken Paxton, Attorney General of the State of Texas, was proper.

MetTel "sells electrical, light, and radio signals to customers, who then use those signals to make phone calls or access the internet." Because we are bound by the precedent of the Austin Court of Appeals in deciding this case and that court has determined the sale of telecommunication products and signals constitutes a provision of services, we affirm the trial court's judgment.[1] *See NTS Commc'ns, Inc. v. Hegar*, No. 03-16-00771-CV, 2018 WL 2728065, at \*2, \*4–5 (Tex. App.—Austin June 7, 2018, pet. denied) (mem. op.).

## I.      The Trial Court's Application of Franchise Tax Law

"A franchise tax is imposed on each taxable entity that does business in this state or that is chartered or organized in this state." TEX. TAX CODE ANN. § 171.001(a) (Supp.). The rate of the franchise tax is a set percentage of the taxable margin. *See* TEX. TAX CODE ANN. § 171.002(a),

---

[1]Originally appealed to the Third Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001. We follow the precedent of the Third Court of Appeals in deciding this case. *See* TEX. R. APP. P. 41.3.

(b) (Supp.).[2]   A taxable entity may elect "to subtract cost of goods sold for the purpose of computing its taxable margin."  TEX. TAX CODE ANN. § 171.1012(b) (Supp.); *see* TEX. TAX CODE ANN. § 171.101(a)(1)(B)(ii)(a)(1).  COGS includes "all direct costs of acquiring or producing . . . goods."  TEX. TAX CODE ANN. § 171.1012(c) (Supp.).

The term "goods" refers to "real or tangible personal property sold in the ordinary course of business as a taxable entity."  TEX. TAX CODE ANN. § 171.1012(a)(1) (Supp.).  Tangible personal property is what "can be seen, weighed, measured, felt, or touched or that is perceptible to the senses in any other manner."  TEX. TAX CODE ANN. § 171.1012(a)(3)(A)(i) (Supp.).  The term "'[t]angible personal property' does not include . . . services."  TEX. TAX CODE ANN. § 171.1012(a)(3)(B)(ii) (Supp.).

MetTel delivers signals through use of telephone lines, copper wire, and fiber-optic cable.  To sell telecommunication signals to its customers, MetTel leased telephone lines from other telecommunications companies.  MetTel subtracted the costs of the leases as COGS in computing its taxable margin in four report years from 2011 to 2014.  Following an audit, the Comptroller disallowed the deduction after concluding that MetTel did not sell tangible personal property and found that MetTel owed $77,353.70 in unpaid franchise taxes for the four-year period at issue.  After paying the assessment under protest, MetTel filed a taxpayer suit in Travis County district court.  *See* TEX. TAX CODE ANN. §§ 112.001, 112.051.

---

[2]"[T]he rate of the franchise tax is 0.375 percent of taxable margin for those taxable entities primarily engaged in retail or wholesale trade" and "0.75 percent of taxable margin" for other taxable entities.  TEX. TAX CODE ANN. § 171.002(a), (b).  "A taxable entity is primarily engaged in retail or wholesale trade only if . . . [it] does not provide retail or wholesale utilities, including telecommunications services, electricity, or gas."  TEX. TAX CODE ANN. § 171.002(c)(3) (Supp.).  Our opinion in this case does not turn on whether MetTel is or is not a provider of retail or wholesale trade.

The question presented to the trial court was whether MetTel sold tangible personal property or services. The Texas Tax Code defines "telecommunications services" as "the electronic or electrical transmission, conveyance, routing, or reception of sounds, signals, data, or information utilizing wires, cable, radio waves, microwaves, satellites, fiber optics, or any other method now in existence or that may be devised, including but not limited to long-distance telephone service." TEX. TAX CODE ANN. § 151.0103(a). MetTel sought to distance itself from this terminology by calling itself a "provider of telecommunications solutions and products."

The trial court rejected MetTel's argument, found that it sold telecommunications services, and ruled that MetTel could not subtract the COGS since it did not sell tangible personal property. As a result, the trial court entered a take-nothing judgment against MetTel.

On MetTel's request, the trial court entered findings of fact and conclusions of law. MetTel challenges the trial court's conclusion that MetTel sold services, not tangible personal property, and the findings of fact supporting its conclusion, because they are unsupported by the record.

## II. Standard of Review

"In an appeal from a bench trial, the trial court's findings of fact 'have the same force and dignity as a jury's verdict upon questions.'" *Seasha Pools, Inc. v. Hardister*, 391 S.W.3d 635, 639 (Tex. App.—Austin 2012, no pet.) (quoting *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991) (citing *Ludwig v. Encore Med., L.P.*, 191 S.W.3d 285, 294 (Tex. App.—Austin 2006, pet. denied))). "The trial court is the 'sole judge of the credibility of the witnesses and the weight to be given their testimony.'" *Id.* (quoting *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696

4

(Tex. 1986)). "The trial court may believe one witness, disbelieve others, and resolve inconsistencies in any witnesses's testimony." *Id.*

We review "a trial court's findings of fact for legal and factual sufficiency of the evidence by the same standard applied to a jury verdict." *Id.* (citing *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996) (per curiam); *Anderson*, 806 S.W.2d at 794; *Ludwig*, 191 S.W.3d at 294). "When, as here, a party attacks the legal sufficiency of an adverse finding on an issue on which [it] has the burden of proof, [it] must demonstrate that the evidence establishes that issue as a matter of law." *Id.* (citing *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) (per curiam)). "When a party attacks the factual sufficiency of an adverse finding on an issue on which [it] has the burden of proof, [it] must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence." *Id.* "Conversely, we review a trial court's conclusions of law de novo." *Id.* (citing *FFE Transp. Servs. v. Fulgham*, 154 S.W.3d 84, 89–90 (Tex. 2004)). "Further 'we will not reverse an erroneous conclusion if the trial court rendered the proper judgment.'" *U.S. Concrete, Inc. v. Hegar*, No. 03-17-00315-CV, 2019 WL 1388714, at *2 (Tex. App.—Austin Mar. 28, 2019, no pet. h.) (quoting *City of Austin v. Whittington*, 384 S.W.3d 766, 779 n.10 (Tex. 2012)).

## III. Analysis

MetTel argues that digital light, electrical, and radio frequency signals are tangible because they are perceptible to the senses.[3] It contends that it does not provide a service because creating

---

[3]MetTel argues that signals can be perceived by the senses. Its trial brief stated,

> [D]igital light signals are electronic signals that are transmitted through fiber optic cables as beams of light. Digital light signals can be seen and touched. If touched they would produce a burning

the signals is an automated process that does not involve the labor of MetTel employees. It also argues that even though it sells signals, it does not provide a telecommunication service because it does not have the infrastructure to deliver, transmit, or convey the signals. We disagree.

The fact that MetTel leased the means by which it made its signals available to customers did not transform its business to something other than the transmission, conveyance, or routing of its signals. Its product would be useless otherwise since MetTel contracted with customers for delivered signals and billed customers for, among other things, telephone services and long-distance charges. In deducting the costs of the leases, MetTel deducted the costs of delivering its product. Yet, COGS includes "all direct costs of acquiring or producing," but not transporting or delivering the product. *See U.S. Concrete, Inc.*, 2019 WL 1388714, at *2, *5 (ready-mix concrete manufacturer could not deduct as COGS costs of transporting or delivering ready-mix concrete because while the mixer-trucks agitated the concrete to preserve its state of suspension while in transit, the unhardened concrete was being preserved and transported, not manufactured); TEX.

---

sensation, similar to touching a laser. Digital light signals may also be measured in decibels by light meters.

Electrical signals, on the other hand, are transmitted through electromagnetic waves over copper or coaxial cables. Electrical signals are both perceptible and measurable. They can be seen via an oscilloscope, measured via volts meters, and if touched would deliver a shock.

Radio frequency signals are also transmitted through electromagnetic waves. But unlike digital light signals and electrical signals, radio frequency signals are transmitted through the air. Despite this, they can still be perceived by the senses or measured with the proper equipment. If the electromagnetic waves were concentrated sufficiently, the electromagnetic waves would feel the same as a laser beam. Also, radio frequency signals can be heard. Finally, radio frequency signals are measurable with spectrum analyzers.

(Footnotes omitted). The Comptroller and Attorney General respond that it is the light or electricity that is perceived by the senses and that MetTel does not sell light or electricity.

TAX CODE ANN. § 171.1012(e)(3) (Supp.) ("The cost of goods sold does not include . . . distribution costs, including outbound transportation costs.").

The record also contains evidence that MetTel marketed itself as a service provider and stated it was providing services in its contracts with customers. After its Texas subsidiary represented itself as a "provider of telecommunications services" to the Texas Public Utility Commission (PUC), it obtained a "service provider certificate of operating authority" from the PUC. Its leases of telephone lines used to transmit its signals also represented that MetTel provided telecommunications services to the end user. Given this evidence, the trial court was free to reject testimony from MetTel's witnesses attempting to describe their business as something other than the provision of services.

In this transfer case, we are bound by the precedent of the Third Court of Appeals, which has already decided that provision of telecommunication products constitutes the provision of services, not goods. *NTS Commc'ns, Inc.*, 2018 WL 2728065, at *4. That case involved the sale by NTS Communications, Inc., of internet access, landline telephone services, and online video streams supplied to customers through a network of cables and wires. *Id.* at *1. Its products were delivered by electrical signal transmitted by fiber-optic copper and cable networks. *Id.* NTS deducted the cost of electricity used to generate and transmit its products as COGS. The Comptroller disallowed the deduction and argued that NTS sold services, not goods. *Id.* at *2. The outcome of the Austin Court of Appeals' well-reasoned statutory construction analysis was that "telecom products" and the provision of internet access, telephone connectivity, and video streams through a network of cables and wires are "services." *Id.* at *4. As a result, the Austin

7

Court of Appeals affirmed the trial court's grant of the Comptroller's motion for summary judgment.[4]

MetTel says it "sells electrical, light, and radio signals to customers, who then use those signals to make phone calls or access the internet." Based on the Austin Court of Appeals' opinion in *NTS Communications* and the record presented at the bench trial, we cannot conclude either that MetTel has met its burden to show that the trial court's factual findings were unsupported by the record or that they were against the great weight and preponderance of the evidence. Our de novo review of the trial court's conclusions of law also yields the result that the trial court's conclusions were correct.[5] As a result, we overrule MetTel's points of error related to whether it sold goods or services.

## IV.    Conclusion

We affirm the trial court's judgment.


Scott E. Stevens
Justice


Date Submitted:     August 1, 2019
Date Decided:        August 21, 2019

---

[4]We find MetTel's attempt to have us abandon the statutory construction in *NTS Communications* and minimalize the holding by describing it as dicta unavailing.

[5]We agree with MetTel that some of the trial court's findings of fact were conclusions of law and have applied a de novo review of those conclusions.