# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00600-CV

**Appellant, Seasha Pools, Inc.// Cross-Appellant, Robert Hardister**

**v.**

**Appellee, Robert Hardister// Cross-Appellee, Seasha Pools, Inc.**

### FROM THE DISTRICT COURT OF HAYS COUNTY, 22ND JUDICIAL DISTRICT
### NO. 05-1327, HONORABLE WILLIAM HENRY, JUDGE PRESIDING

## O P I N I O N

In this breach of contract case, Robert Hardister claims that Seasha Pools, Inc. ("Seasha Pools") is liable for the cost of repairing the pool it constructed on Hardister's property. After a bench trial, the trial court found that Seasha Pools had breached the contract, but that there was insufficient evidence concerning the cost of repairing the pool. Consequently, the trial court concluded that Hardister was not entitled to damages, but awarded him attorney's fees pursuant to section 38.001 of the Texas Civil Practice and Remedies Code. Seasha Pools appeals from the trial court's judgment awarding attorney's fees to Hardister. Hardister cross-appeals, challenging the trial court's conclusion that there was insufficient evidence of damages. Because we conclude that the trial court erred in determining that there was insufficient evidence of damages, we reverse the trial court's judgment in part, and remand for the limited purpose of determining what damages and attorney's fees are appropriate.

# BACKGROUND

During the construction of his new home, Hardister decided that he wanted to have a pool built on his property.[1] Randall "Randy" Meek, Hardister's general contractor, recommended that Hardister hire Robert "Bobby" Stevens, the proprietor of Seasha Pools, for the pool project. After meeting with Stevens, Hardister entered into a written contract with Seasha Pools for the construction of the pool. The contract specified, among other things, that the shallow end of the pool would be three-feet-six-inches deep.[2]

During the early stages of construction, Hardister visited the property and spoke with Stevens regarding the progress of the pool construction. During their conversation, Hardister told Stevens that he was learning how to perform "flip turns" while swimming laps at a local pool. Stevens advised Hardister that the "regulation" depth for flip turns was four feet, to which Hardister replied "okay."[3] Stevens took Hardister's comment to mean that he wanted the depth in the shallow end to be changed to four feet. Stevens changed the depth of the shallow end to four feet at no additional cost, although the contract was not formally amended.

Hardister subsequently visited the property before concrete had been poured to form the shell of the pool. He noticed that the hole for the pool seemed unusually deep, and he became concerned that the pool was not being built to specifications. Hardister called Stevens and left three or four messages in which he expressed his concern about the depth of the pool. Stevens never

---

[1] The facts recited herein are taken from the testimony and evidence admitted at trial.

[2] Stevens advised Hardister that three-feet-six-inches was the normal depth for the shallow end of residential pools.

[3] Hardister and Stevens disagreed about what was said during this exchange. Stevens claimed that Hardister said "Let's make it four."

2

returned these calls. Hardister then spoke with Meek, told him about his concerns regarding the pool's depth, and asked Meek to "follow up" with Stevens. Meek spoke with Stevens, and Stevens said "Don't worry about it, I know what I'm doing, I'll get it right."

After the pool was finished and filled with water, Hardister realized that the shallow end was too deep and that his daughter could not stand in the pool with her mouth above water. Hardister measured the pool and determined that it was four feet deep. He told Meek about the issue, and Meek said that he would follow up with Stevens. Stevens contacted Hardister, reminded him of their conversation regarding flip turns, and Hardister explained that he did not intend that conversation to mean that the depth of the pool would be changed.

Stevens offered to raise the depth of the shallow end to three-feet-six-inches at no additional cost. In order to raise the depth of the pool, Stevens would add more "gunite" to the shallow end and then replaster that end of the pool. Hardister asked Stevens if the replaster would affect the appearance of the pool, and Stevens explained that there might be a small seam between the old and new plaster, but that it would not be noticeable unless you inspected it closely. Hardister accepted Stevens plan to replaster the pool. When the new plaster was being poured, Hardister realized that the color of the new plaster was darker than that of the existing plaster. Stevens assured him that the color would fade over time and the pool would eventually be uniform.

According to Hardister, the color did not fade, and the pool was a noticeably darker shade of grey at the shallow end, with a clear line between the old and new plaster. Furthermore, the new edges between the walls and bottom of the pool intersected at right angles, whereas the edges in the deep end were rounded. Finally, during the construction process, the

electrical conduit for one of the pool lights was "crushed," presumably by one of the rocks used in the landscape. Hardister requested that Stevens fix these remaining issues, but Stevens refused.

Hardister subsequently called two other pool service companies and explained the problems with the replastered shallow end. Hardister testified that both companies advised him that the proper solution would be to completely replaster the entire pool, and each provided him with written bids for this repair ranging from $3,888 to $6,407. Hardister solicited additional bids from other pool contractors online, as well as a bid for repairing the light fixture. Hardister brought this underlying suit for breach of contract, seeking damages for the cost of repairing the pool and the light fixture.[4]

At the outset of the bench trial, the parties agreed to admit the two written bids for replastering the pool, as well as the bid for repairing the light fixture. Seasha Pools stipulated that these bids were reasonable, but did not concede liability.[5] At trial, Hardister testified about his breach of contract claim as outlined above. When Hardister's counsel asked him what the reasonable and necessary cost of replastering the pool would be, Seasha Pools objected, asserting that Hardister did not qualify as an expert witness. Hardister's counsel claimed that he could give his lay opinion of the reasonable cost of repair based on his research. The trial court sustained Seasha Pools's

---

[4] Hardister also sued Seasha Pools for deceptive trade practices, common law fraud, and fraud in a real estate transaction. *See* Tex. Bus. & Com. Code Ann. §§ 17.45–.50 (West 2011) (listing violations of Texas Deceptive Trade Practices Act), 27.01 (defining fraud in real estate transactions); *Cruz v. Andrews Restoration, Inc.*, 364 S.W.3d 817, 826–27 (Tex. 2012) (discussing elements of common law fraud). The trial court subsequently found in favor of Seasha Pools on these claims, and Hardister does not challenge those rulings on appeal.

[5] Seasha Pools objected to Hardister's testimony about the bids he solicited online as inadmissible hearsay, but did not object to the introduction of the two bids Hardister received from two pool service companies. The trial court sustained Seasha Pool's objection to Hardister's testimony concerning the online bids.

objection and excluded Hardister's general opinion about the reasonable cost of repairing the pool. However, Hardister testified without objection that in his opinion, the written bids for replastering the pool that were admitted were reasonable.

Hardister then testified about the electrical conduit that was "crushed" at some point during construction. He testified that when Stevens learned that the conduit had been crushed, he "sealed the conduit near the light fixture in the pool." Hardister stated that he was concerned the conduit was not properly grounded, but he was informed by an independent electrician that Stevens's repair was "a legitimate way to ground the pool." Nonetheless, Hardister testified that he "desired" to have the electrical conduit repaired to the contract's specifications.

Stevens, testifying on behalf of Seasha Pools, stated that he told Hardister that he could not guarantee the new plaster would match the existing plaster. On cross-examination, Stevens conceded that he also told Hardister that any difference in the color or appearance of the new plaster would be negligible. Furthermore, Stevens testified that it cost him $4,500 to partially replaster the pool, and estimated that a complete replaster would have cost $6,000.

After the conclusion of the evidence, the trial court orally pronounced its finding that Seasha Pools had breached the contract. The trial court further stated that because Hardister failed to introduce expert testimony about the cost of repair, there was "no evidence of the amount of damages on the breach of contract action . . . ." The trial court did not award Hardister damages for the cost of repairing the pool. However, the trial court awarded Hardister $8,000 in attorney's fees "based on the breach of contract action." In response to Hardister's request, the trial court issued the following written findings of fact and conclusions of law:

5

*FINDINGS OF FACT*

1.  On or about February 4, 2004, Robert Hardister contracted with Seasha Pools, Inc. for the construction of a swimming pool at Hardister's residence.

2.  A breach of contract case was tried by consent.

*CONCLUSIONS OF LAW*

1.  There is insufficient evidence of the amount of damages on the breach of contract action as it relates to the cost of repair element of damages.

2.  $8,000.00 is the amount found as reasonable attorney's fees based on the breach of contract action awarded in favor of Hardister and against Seasha Pools, Inc.

Seasha Pools filed this appeal of the trial court's award of attorney's fees, asserting that there can be no attorney's fees in the absence of damages.[6]  On cross-appeal, Hardister argues that (1) the trial court erred in determining that he failed to present sufficient evidence of damages and (2) if we sustain his first issue, we should remand for reconsideration of damages and attorney's fees.  For convenience sake, we will address Hardister's first issue on cross-appeal, then discuss the issue of attorney's fees.

**STANDARD OF REVIEW**

In an appeal from a bench trial, the trial court's findings of fact "have the same force and dignity as a jury's verdict upon questions." *Anderson v. City of Seven Points*, 806 S.W.2d 791,

---

[6] Hardister concedes that if he does not recover damages, he is not entitled to recover attorney's fees.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 38.001 (West 2011); *MBM Fin. Corp. v. Woodlands Operating Co.*, 292 S.W.3d 660, 666 (Tex. 2009) (noting that section 38.001 impliedly requires party to recover "some amount on [the] claim" in order to recover attorney's fees).

794 (Tex. 1991); *Ludwig v. Encore Med., L.P.*, 191 S.W.3d 285, 294 (Tex. App.—Austin 2006, pet. denied). The trial court is the "sole judge of the credibility of the witnessess and the weight to be given their testimony." *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986). The trial court may believe one witness, disbelieve others, and resolve inconsistencies in any witnesses's testimony. *Id.* at 697.

This Court reviews a trial court's findings of fact for legal and factual sufficiency of the evidence by the same standard applied to a jury verdict. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996); *Anderson*, 806 S.W.2d at 794; *Ludwig*, 191 S.W.3d at 294. When, as here, a party attacks the legal sufficiency of an adverse finding on an issue on which he has the burden of proof, he must demonstrate that the evidence establishes that issue as a matter of law. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) (per curiam). When a party attacks the factual sufficiency of an adverse finding on an issue on which he has the burden of proof, he must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence. *See id.* Conversely, we review a trial court's conclusions of law de novo. *See FFE Transp. Servs. v. Fulgham*, 154 S.W.3d 84, 89–90 (Tex. 2004).

**DISCUSSION**

The trial court stated in its oral pronouncement that based on Hardister's failure to present expert testimony, there was "no evidence" of damages. Subsequently, the court wrote in its conclusions of law that there was "insufficient evidence of the amount of damages." A court's oral statements at trial are not findings of facts or conclusions of law. *See In re Doe 10*, 78 S.W.3d 338, 340 n.2 (Tex. 2002); *Intec Sys., Inc. v. Lowrey*, 230 S.W.3d 913, 918 (Tex. App.—Dallas 2007, no pet.). Furthermore, in a civil case, when oral pronouncements conflict with a written judgment,

the written judgment prevails. *See Cash v. Cash*, No. 03-04-00560-CV, 2005 Tex. App. LEXIS 5909, at *10–11 (Tex. App.—Austin July 27, 2005, no pet.) (mem. op.) (noting that trial court's "oral pronouncement is often tentative" and court has plenary power to modify oral ruling without hearing new evidence). Finally, a trial court's designation of items as findings of fact or conclusions of law is not controlling on appeal, and we may treat the court's ruling as a factual finding or legal conclusion regardless of the label used. *Ray v. Farmer's State Bank*, 576 S.W.2d 607, 608 n.1 (Tex. 1979); *Cities of Allen v. Railroad Comm'n of Tex.*, 309 S.W.3d 563, 570 (Tex. App.—Austin 2010), *aff'd in part, rev'd on other grounds sub. nom. Atmos Energy Corp. v. Cities of Allen*, 353 S.W.3d 156 (Tex. 2011).

Therefore, in reviewing the judgment in this case, we review only the trial court's written determination that there was insufficient evidence of damages as it relates to the cost of repair. This constitutes a factual finding—the functional equivalent of an award of $0 in damages—which is entitled to the same deference as a jury verdict. *See Anderson*, 806 S.W.2d at 794.

In its brief, Seasha Pools states that the trial court could have found that the evidence was insufficient based on its role as factfinder, and if "the trial court acted as a fact finder, the evidence allowed the possibility of reasonable disagreement . . . ." In response, Hardister claims that even if the trial court made the factual determination that the evidence was insufficient, that finding was in error because the evidence of damages was "not only sufficient to support a judgment, but conclusive." We construe Hardister's argument to mean that if the trial court, acting as factfinder, determined that he failed to prove damages, the evidence is both factually and legally insufficient

8

to support that finding.[7]  *See* Tex. R. App. P. 38.9 (requiring briefs to be construed liberally); *Republic Underwriters Ins. Co. v. Mex-Tex, Inc.*, 150 S.W.3d 423, 427–48 (Tex. 2004) (noting that courts should reasonably but liberally construe appellate pleadings).  We review Hardister's factual-sufficiency challenge first.

As plaintiff, Hardister bears the burden of proving cost-of-repair damages by a preponderance of the evidence.  *Foster v. Centrex Capital Corp.*, 80 S.W.3d 140, 143 (Tex. App.—Austin 2002, pet. denied).  Therefore, to succeed on his factual-sufficiency challenge, Hardister must show that the trial court's finding as to damages was "so against the great weight and preponderance of the evidence that it is clearly wrong and unjust." *Burnet Cent. Appraisal Dist. v. Millmeyer*, 287 S.W.3d 753, 757 (Tex. App.—Austin 2009, no pet.) (citing *Dow Chem. Co.*, 46 S.W.3d at 242).  In reviewing the factual sufficiency, we consider and weigh all of the evidence in the record, both in support of and against the trial court's finding of zero damages.  *Id.*  We may not substitute our judgment for that of the trier of fact, even if we would have reached a different result on the evidence.  *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998).

The Texas Supreme Court has stated that a repair estimate, such as a bid or bill, is some evidence from which a factfinder can determine the cost of repairing a roof.  *Bennett v. McDaniel*, 295 S.W.3d 644, 645 (Tex. 2009).  "Such evidence might ordinarily be properly excluded as hearsay, but [if] no hearsay objection was lodged" then the estimate may be considered for the truth of the matter asserted, i.e., that it represents the reasonable and necessary costs of the underlying repair.  *Id.*  Thus, an "objective valuation of services, such as a bill, receipt or . . . an

---

[7] Because this is an appeal from a bench trial, Hardister was not required to file a motion for new trial as a prerequisite to challenging the sufficiency of the evidence on appeal.  *Office of the Att'y Gen. v. Burton*, 269 S.W.3d 173, 175 (Tex. 2012) (citing Tex. R. App. P. 324(a), (b)).

9

estimate, is evidence from which a jury can infer reasonable cost of repair." *Bernstein v. Thomas*, 298 S.W.3d 817, 826 (Tex. App.—Dallas 2009, no pet.) (concluding that estimate for repairing home's foundation is sufficient evidence of cost of repair).

Similarly, courts have recognized that property owners may provide lay testimony about the cost of repairing real or personal property based on estimates they obtain from third parties. *See SAS & Assoc. v. Home Mktg. Servicing*, 168 S.W.3d 296, 302 (Tex. App.—Dallas 2005, pet. denied) (noting shareholder could give lay opinion on repair cost after obtaining bids); *see also Gupta v. Manwani*, No. 04-03-00152-CV, 2004 Tex. App. LEXIS 8417, at *8 (Tex. App.—San Antonio Sept. 22, 2004, no pet.) (mem. op.). As one court explained, a homeowner's "testimony about his reliance on the contractor's advice is enough to establish that he has knowledge about the cost of repairs." *Gupta*, 2004 Tex. App. LEXIS 8417 at *8; *see also Bernstein*, 298 S.W.3d at 826 (noting property owner could testify about the reasonableness of third party's estimate for repairing foundation).

In this case, Hardister introduced, without objection, the written bids he received concerning the cost of replastering his pool and repairing the light fixture. In addition, Hardister testified without objection that he believed these bids were reasonable estimates of the cost of repair. The contractors' bids and Hardister's lay testimony are competent evidence from which a factfinder could determine the reasonable cost of repairing the pool and light fixture. *See Bennett*, 295 S.W.3d at 645; *Bernstein*, 298 S.W.3d at 826.[8]

---

[8] To the extent the trial court concluded that expert testimony was required in this case, that conclusion was in error. *See Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 583 (Tex. 2004) (noting that whether expert testimony is necessary is question of law which courts review de novo). There is nothing in the record to indicate that the cost associated with replastering a pool was so technical or complex that it required expert testimony. *See Mazuca v. Schumann*, 82 S.W.3d 90, 97

Furthermore, the record includes the following additional evidence concerning the replastering of the pool:

- Photographs depicting a clear demarcation between the coloration in the shallow and deep ends of the pool;

- The fact that a partial replaster resulted in the color disparity between the shallow and deep ends of the pool;

- Stevens—who potentially qualified as an expert based on his twenty-five years of experience in pool construction—testifying that a partial replaster cost him $4,500, while a complete replaster would have cost him $6,000;

- Hardister's testimony that the companies who created the written bids told him that replastering the pool was the appropriate remedy for the color variation between the shallow and deep ends; and

- Seasha Pools's stipulation that the bids were reasonable.

There is nothing in the record that contradicts the written bids for replastering the pool, nor Hardister's testimony that those bids represent the reasonable cost of repairing the pool. From this record, we conclude that the great weight and preponderance of the evidence shows that replastering the pool was a reasonable and necessary cost of repair.

By contrast, there is conflicting evidence about the necessity of repairing the crushed electrical conduit. Hardister testified that Stevens sealed the electrical conduit after it was crushed, and thus Hardister became concerned the conduit was not properly grounded. However, Hardister

---

(Tex. App.—San Antonio 2002, pet. denied) (explaining when expert testimony required). Like the roof repair in *Bennett v. McDaniel*, 295 S.W.3d 644, 645 (Tex. 2009) or the foundation repair in *Bernstein v. Thomas*, 298 S.W.3d 817, 826 (Tex. App.—Dallas 2009, no pet.), the record indicates that the cost of repairing this pool could be proven through bids and Hardister's lay opinion based on the estimates.

11

admitted that an electrician advised him that Stevens's repair was a "legitimate" method of grounding the conduit. To the extent Hardister asserted that he wanted the conduit repaired to contract conditions, the trial court could have reasonably concluded that repair was not reasonable and necessary.

Therefore, to the extent the trial court made an adverse finding that Hardister was not entitled to damages for the cost of replastering the pool, that finding was clearly wrong and unjust. To the extent the trial court found that repairing the electrical conduit was not necessary, that finding is reasonably supported by the record. We reverse the trial court's finding of no damages and remand for further proceedings in accordance with our opinion. *See Texas Nat'l Bank v. Karnes*, 717 S.W.2d 901, 903 (Tex. 1986) ("[A] court of appeals cannot make original findings of fact, it can only 'unfind' facts.") (internal citations omitted); *Duff v. Spearman*, 322 S.W.3d 869, 887 (Tex. App.—Beaumont 2010, pet. denied).[9]

**Attorney's fees**

Seasha Pools asserts, and Hardister concedes, that if Hardister fails to recover damages he may not recover attorney's fees. *See* Tex. Civ. Prac. & Rem. Code Ann. § 38.001; *MBM Fin. Corp. v. Woodlands Operating Co.*, 292 S.W.3d 660, 666 (Tex. 2009) (noting that section 38.001 impliedly requires party to recover "some amount on [the] claim" in order to recover attorney's fees). However, given that we have remanded this case for a determination of damages,

---

[9] Although the record does not support the trial court's award of $0 in damages, the evidence only establishes a range for the cost of replastering the pool, and thus Hardister has not conclusively established a specific amount of damages. *See Smith v. Patrick W. Y. Tam Trust*, 296 S.W.3d 545, 548–49 (Tex. 2008) (noting evidence did not support jury award of $0 for attorney's fees, but did not establish amount of attorney's fees as a matter of law). Because the record does not establish the amount of damages as a matter of law, we remand for further proceedings. *Id.*

Hardister will be entitled to recover reasonable attorney's fees based on his breach-of-contract claim. *MBM Fin. Corp.*, 292 S.W.3d at 666. Therefore, we need not address Seasha Pools's complaint regarding the award of attorney's fees. *See* Tex. R. App. P. 47.1.

In Hardister's second issue on cross-appeal, he asserts that if we reverse the trial court's determination of damages, we should remand for reconsideration of the amount of attorney's fees. The trial court did award Hardister attorney's fees based on his breach-of-contract claim. However, in light of our disposition regarding damages, the trial court may wish to reconsider Hardister's reasonable attorney's fees. We therefore sustain Hardister's second issue, reverse the trial court's ruling regarding attorney's fees, and remand the issue to the trial court for further consideration. *See Neeley v. West Orange-Cove Consol. Indep. Sch. Dist.*, 176 S.W.3d 746, 799 (Tex. 2006); *Greater New Braunfels Home Builders Ass'n v. City of New Braunfels*, 240 S.W.3d 302, 310 (Tex. App.—Austin 2007, pet. denied).

We reverse the trial court's determination that there was insufficient evidence of the reasonable and necessary cost of replastering the pool. We remand for further proceedings on the limited issues of what damages are appropriate in light of this evidence and for further consideration of attorney's fees. *See* Tex. R. App. P. 44.1(b) ("If error affects part of, but not all, the matter in controversy and that part is separable without unfairness to the parties, the judgment must be reversed . . . only as to the part affected by the error.").

## CONCLUSION

We reverse the portion of the trial court's judgment concerning damages and attorney's fees. We remand the case to the trial court for further proceedings on the limited issues

of damages and Hardister's request for attorney's fees. The remainder of the trial court's judgment is affirmed.

_____

Diane M. Henson, Justice

Before Justices Puryear, Henson and Goodwin

Affirmed in part; Reversed and Remanded in part

Filed:   December 28, 2012

14