# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## ON MOTION FOR REHEARING

## NO. 03-21-00046-CV

**Pools Unlimited, Inc.; Randy Lee Morrow; and Rhonda Jean Morrow, Appellants**

**v.**

**John Houchens and Brenda Houchens, Appellees**

### FROM THE 207TH DISTRICT COURT OF COMAL COUNTY
### NO. C2017-2079B, THE HONORABLE DIB WALDRIP, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

After considering the motion for rehearing filed by John and Brenda Houchens, we deny the motion for rehearing but withdraw our June 3, 2022 opinion and judgment and substitute the following opinion and judgment in their place.

The suit underlying this appeal concerns a dispute over residential pool construction and includes competing claims for breach of contract between the pool builder, Pools Unlimited, Inc., and the homeowners, John Houchens and Brenda Houchens. Before trial, the trial court granted a partial summary judgment in favor of the Houchenses on their claim that Pools Unlimited filed a fraudulent mechanic's lien. During trial, the trial court dismissed Pools Unlimited's breach-of-contract claim against the Houchenses on directed verdict. Finally, after trial, the trial court disregarded the jury's finding that the Houchenses sustained zero

damages as a result of Pools Unlimited's breach and, instead, awarded the Houchenses $58,500 in actual damages on their breach-of-contract claim and $20,000 in statutory damages on their fraudulent-lien claim.

On appeal, we affirm the trial court's directed verdict and dismissal of Pools Unlimited's breach-of-contract claim. However, because we conclude that the trial court erred in granting summary judgment on the Houchenses' fraudulent-lien claim and in awarding damages on their breach-of-contract counterclaim, we will reverse the trial court's judgment and remand for a new trial on those claims.

## BACKGROUND

In May 2017, Pools Unlimited contracted with John for the construction of a swimming pool at his home in Comal County, which he shares with his wife, Brenda.[1] In October 2017, after John failed to pay what Pools Unlimited claimed was the remaining balance owed on the contract, Pools Unlimited filed a mechanic's lien pursuant to Chapter 53 of the Texas Property Code. *See* Tex. Prop. Code §§ 53.251-.260 (procedures for perfecting lien on residential construction projects). In December 2017, Pools Unlimited sued John for breach of contract, seeking to recover the unpaid balance. John then countersued Pools Unlimited for breach of contract, alleging that the construction by Pools Unlimited was deficient, and for fraudulently filing a mechanic's lien.[2] *See* Tex. Civ. Prac. & Rem. Code § 12.002(a) (prohibiting

---

[1] Because many of the parties share the same last name, for clarity we will refer to the parties by their first name when referring to them individually.

[2] The parties brought other claims for affirmative relief. Pools Unlimited brought claims for quantum meruit, fraud, and fraudulent inducement, which the trial court dismissed on summary judgment. The Houchenses sued Pools Unlimited and the Morrows for violations of the Texas Deceptive Trade Practices Act but failed to obtain jury findings in their favor as to

filing of fraudulent lien). Pools Unlimited later added Brenda as an involuntary counter-plaintiff; the Houchenses added Randy "Ryan" Morrow and Rhonda Morrow, the owners of Pools Unlimited, as third-party defendants.[3]

In February 2018, the Houchenses moved for partial summary judgment on their fraudulent-lien claim. After sustaining the Houchenses' objections to evidence submitted by Pools Unlimited in response, the trial court granted the motion for summary judgment as to Pools Unlimited's liability but withheld ruling on the issue of fraudulent-lien damages. *See id.* § 12.002(b) (providing that liability for filing of fraudulent lien includes "greater of: (A) $10,000; or (B) actual damages caused by violation").

The parties' competing breach-of-contract claims were tried to a jury in October 2020. At trial, the parties presented conflicting testimony as to the agreed price for the contracted work. Ryan testified that he and John first discussed the scope of the project in April 2017 and that while the initial proposal totaled $58,711, John later selected options not included in the initial proposal, including the construction of a "custom rock grotto waterfall" with a slide. According to Ryan, the final contract price with these selected options was $69,151, payable over six draws. Ryan also testified that John requested additional work after construction commenced (concrete coating, additional rock work, and a ladder), which brought the total cost to approximately $74,000, of which $31,900 remained unpaid.

---

these alleged violations. Because no party has appealed the trial court's judgment with respect to these other claims, we will limit our discussion of the underlying facts and procedural history to that which is relevant to the claims that are the subject of this appeal.

[3] In this opinion, we will refer to the claims brought by John as being brought by the Houchenses. In addition, any reference to Pools Unlimited includes the Morrows, unless otherwise noted.

Conversely, John testified that the "proposal" for $58,711 was the only contract that he ever signed with Pools Unlimited. Although he acknowledged that he had agreed to the selected options (including the custom rock grotto waterfall and slide), he explained that this work was included in the contract price of $58,711. John also testified that although on May 16, 2017, Ryan sent him an updated contract for $69,151, he refused to sign it because they had already "agreed on a price."

The undisputed evidence at trial showed that the pool was constructed over the summer of 2017 and filled with water on August 18 and that the Houchenses began using the pool soon after. In addition, while the parties disagreed as to the exact amount, at least some amount on the contract remained unpaid. In his testimony, John explained that he stopped paying Pools Unlimited in August 2017 because the work performed, primarily construction of the custom rock grotto waterfall and the spa, was defective and because automation of the pool's heater and chiller failed to operate properly, due to the installation of incompatible equipment. John refused to make further payments on the contract until the defective work was corrected by Pools Unlimited.

In his testimony, Ryan did not dispute that at least some complained-of issues existed and that repairs were necessary, including on the custom rock grotto waterfall. Ryan considered the needed repairs to be "warranty work," however, and informed John that Pools Unlimited would perform whatever work was necessary to correct the issues upon receipt of payment. As of trial, no additional payments had been tendered, and no repairs had been made.

At the close of Pools Unlimited's case in chief, the Houchenses moved for a directed verdict on Pools Unlimited's breach-of-contract claim. Upon considering the arguments of counsel, the trial court determined that Pools Unlimited had breached the construction contract

4

and granted the directed verdict in favor of the Houchenses, effectively rendering judgment that Pools Unlimited take nothing on its breach-of-contract claim.

At the close of trial, the Houchenses' counterclaim for breach of contract was submitted to the jury. In its charge, the trial court instructed the jury that "Pools Unlimited, Inc. and the Houchens[es] did have an agreement" and that "Pools Unlimited, Inc. failed to comply with that agreement." The jury returned a verdict in favor of Pools Unlimited, finding that the Houchenses had sustained zero damages as a result of Pools Unlimited's conduct.

The Houchenses later filed a motion to disregard the jury findings and to enter a judgment notwithstanding the verdict, "awarding them damages in the uncontroverted amount of $58,500." The trial court granted the Houchenses' motion and signed a final judgment awarding the Houchenses $78,500 in actual damages, including $20,000 in statutory damages on their fraudulent-lien claim; $1,000 in exemplary damages; $151,000 in attorney's fees, through the date of judgment; $38,500 in expenses; and $16,000 in pre-judgment interest. This appeal followed.

**DISCUSSION**

In six issues, Pools Unlimited challenges the trial court's (1) summary judgment and award of damages in favor of the Houchenses on their fraudulent-lien claim; (2) directed verdict in favor of the Houchenses, dismissing Pools Unlimited's breach-of-contract claim; (3) decision to disregard the jury's zero-damages finding and, instead, award the Houchenses relief on their breach-of-contract claim against Pools Unlimited, including attorney's fees and expenses.

5

*Fraudulent-lien claim*

We first consider Pools Unlimited's challenge to the trial court's grant of summary judgment in favor of the Houchenses on their fraudulent-lien claim against Pools Unlimited.

To prevail on a summary-judgment motion, the movant must demonstrate that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Tarr v. Timberwood Park Owners Ass'n, Inc.*, 556 S.W.3d 274, 278 (Tex. 2018). When, as in this case, a movant seeks a traditional summary judgment on its own cause of action, the movant has the initial burden of establishing its entitlement to judgment as a matter of law by conclusively establishing each element of its cause of action. *Texas Ass'n of Acupuncture & Oriental Med. v. Texas Bd. of Chiropractic Exam'rs*, 524 S.W.3d 734, 738 (Tex. App.—Austin 2017, no pet.). Evidence is conclusive only if reasonable people could not differ in their conclusions. *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005). Once the movant meets this burden, the burden shifts to the non-movant to present evidence creating a genuine issue of material fact precluding summary judgment. *Trudy's Tex. Star, Inc. v. City of Austin*, 307 S.W.3d 894, 905 (Tex. App.—Austin 2010, no pet.). We review a trial court's decision to grant summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). When reviewing the decision, we consider the evidence in the light most favorable to the nonmovant, and we indulge every reasonable inference and resolve all doubts in the nonmovant's favor. *Id.*; *Provident Life & Acc. Ins. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003).

To obtain summary judgment on their fraudulent-lien claim, the Houchenses were required to present evidence conclusively establishing that Pools Unlimited (1) made, presented,

6

or used a document with knowledge that it was a fraudulent lien; (2) intended the document to be given legal effect as a court document evidencing a valid lien; and (3) intended to cause injury or distress. *See* Tex. Civ. Prac. & Rem. Code § 12.002(a); *Serafine v. Blunt*, 466 S.W.3d 352, 363 (Tex. App.—Austin 2015, no pet.) (listing elements). Because Pools Unlimited filed its lien pursuant to Chapter 53 of the Texas Property Code, the Houchenses also were required to show that Pools Unlimited intended to defraud them. *See* Tex. Civ. Prac. & Rem. Code § 12.002(c).

In support of their motion for summary judgment, the Houchenses submitted John's affidavit, which included as attachments (1) a copy of the Texas Homestead Designation that he and Brenda had filed in the Comal County real property records; (2) a copy of the lien filed by Pools Unlimited; and (3) a letter dated October 13, 2017, from Pools Unlimited's attorney, transmitting a copy of the lien to the Houchenses. In his affidavit, John states that he and Brenda have been married since 2002 and have owned the Property since 2007 and that the Property has been continuously designated as their homestead. Further, according to John's affidavit, when he initially met with Ryan in April 2017, he informed Ryan that he and his wife resided at the Property. John introduced Ryan to Brenda, but "[a]t no time did [Brenda] ever sign a contract with Pools Unlimited." In addition, John states, neither he nor Brenda ever received the version of the contract attached to the Pools Unlimited's lien (reflecting a total price of $69,151), and he never executed a contract with Pools Unlimited that included a provision informing him of his right to rescind. The Houchenses also submitted an affidavit from their attorney, Bryan Woods, in support of their motion for summary judgment. In his affidavit, Woods states, and attached supporting documentation showing, that Pools Unlimited's corporate charter with the Secretary of State had been forfeited prior to its filing of the lien. The Houchenses argue that the trial court did not err in granting their motion for summary judgment

7

because this evidence establishes that Pools Unlimited knew that the lien was invalid when it was filed.

We agree that the Houchenses' summary-judgment evidence suggests that Pools Unlimited's lien was invalid and unenforceable because Texas law required both John and Brenda to sign the contract on which the lien was based, *see* Tex. Prop. Code §§ 41.007(b), 53.254(a), (c), and because the contract failed to include certain statutorily mandated language, informing them of their rights to rescind, *see id.* § 41.007(a). We cannot agree, however, that the evidence conclusively establishes that the lien filed by Pools Unlimited was fraudulent. This Court has recognized that in the context of Section 12.002(a) of the Civil Practice and Remedies Code, "fraudulent" means "a knowing misrepresentation of the truth or concealment of a material fact to induce another to act to his or her detriment." *MFG Fin., Inc. v. Hamlin*, No. 03-19-007160-CV, 2021 Tex. App. LEXIS 4331, at *12 (Tex. App.—Austin June 3, 2021, pet. denied) (mem. op.) (citing state and federal cases, including *Walker & Assocs. Surveying, Inc. v. Roberts*, 306 S.W.3d 839, 849 (Tex. App.—Texarkana 2010, no pet.)). Consequently, we explained, "an important distinction may be drawn between a document that 'is factually inaccurate in some respect and one that is attempting to perpetrate a fraud'—in other words, a lien may be invalid and unenforceable but not necessarily fraudulent.'" *Id.* at *13 (quoting *Walker & Assocs.*, 306 S.W.3d at 849). Moreover, "[i]ntent is a fact question uniquely within the realm of the trier of fact because it so depends upon the credibility of the witnesses and the weight to be given to their testimony." *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434 (Tex. 1986). Therefore, whether a lien filer intended to defraud is ordinarily a question of fact. *See Hahn v. Love*, 321 S.W.3d 517, 525 (Tex. App.—Houston [1st Dist.] 2009, pet. denied)

(noting that question of whether debtor conveyed property with intent to defraud is ordinarily question of fact).

In this case, the summary-judgment evidence submitted by the Houchenses fails to conclusively establish that Pools Unlimited actually knew that the lien was invalid and unenforceable at the time it was filed and that they filed it with the intent to harm or defraud. *See Walker & Assocs.*, 306 S.W.3d at 847-50 (concluding that trial court erred in granting summary judgment on fraudulent-lien claim because although there was evidence that lien was invalid, fact issues existed as to knowledge and intent); *Aland v. Martin*, 271 S.W.3d 424, 431-32 (Tex. App.—Dallas 2008, no pet.) (concluding that even if there was evidence of knowledge by defendant "that a valid lien could not be placed on community property without consent of both parties," it was legally insufficient to prove "intent to cause injury"). While the lien filed by Pools Unlimited may be invalid and unenforceable, we conclude that there is a fact issue as to whether it is fraudulent.[4]  *See Walker & Assocs.*, 306 S.W.3d at 849; *see also* Tex. Prop. Code §§ 53.160-.162 (providing summary procedure to remove invalid or unenforceable mechanic's lien).  The trial court erred in granting summary judgment in favor of the Houchenses

---

[4]  On appeal, the Houchenses also point to evidence presented at trial that, they contend, shows that Pools Unlimited knew that the amount claimed in the lien was incorrect because "it did not account for credits owed to the Houchenses." *See Progressive Cnty. Mut. Ins. v. Boyd*, 177 S.W.3d 919, 921 (Tex. 2005) ("[A] trial court's erroneous decision on summary judgment can be rendered harmless by subsequent events in the trial court.").  Assuming that we may consider this later-presented evidence, we disagree that it is sufficient, either alone or in totality, to establish the Houchenses' fraudulent-lien claim as a matter of law. *See Gray v. Entis Mech. Servs., L.L.C.*, 343 S.W.3d 527, 530 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (concluding that evidence of refusal to remove lien for disputed amount did not establish intent to cause harm as a matter of law).

on their fraudulent-lien claim against Pools Unlimited. We sustain Pools Unlimited's second appellate issue.[5]

### *Pools Unlimited's breach-of-contract claim*

In its fifth issue, Pools Unlimited asserts that the trial court erred in granting the Houchenses' motion for directed verdict on its claim for breach of contract against the Houchenses.

A directed verdict is warranted when the evidence is such that no other verdict can be reached, and the moving party is entitled to a judgment as a matter of law. *Byrd v. Delasacha*, 195 S.W.3d 834, 836 (Tex. App.—Dallas 2006, no pet.). Consequently, in reviewing a directed verdict, we apply a legal-sufficiency standard of review. *City of Keller*, 168 S.W.3d at 827. When a party moves for directed verdict on an issue on which it does not have the burden of proof, we examine the evidence in the light most favorable to the nonmovant and decide whether there is any evidence of probative value to raise an issue of material fact on the question presented. *Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 217 (Tex. 2011). "If the evidence . . . would enable reasonable and fair-minded people to differ in their conclusions, the jurors must be allowed to do so." *City of Keller*, 168 S.W.3d at 822.

The Houchenses moved for a directed verdict on Pools Unlimited's breach-of-contract claim on the ground that Pools Unlimited had failed to present legally sufficient evidence as to the element of damages. *See Elness Swenson Graham Architects, Inc. v. RLJ II-C*

---

[5] Because we conclude that the Houchenses failed to meet their initial burden on summary judgment to present evidence conclusively establishing each element of their fraudulent-lien claim, we need not decide Pools Unlimited's first issue on appeal, that is, whether the trial court erred in striking its responsive summary-judgment evidence. *See* Tex. R. App. P. 47.1.

*Austin Air, LP*, 520 S.W.3d 145, 166 (Tex. App.—Austin 2017, pet. denied) (noting that "an essential element of breach-of-contract claim is the existence and amount of damages resulting from the alleged breach"). Specifically, the Houchenses argued that the evidence presented established that Pools Unlimited breached the contract by failing to fully perform and that it could not recover under the doctrine of substantial performance because it had failed to present any evidence as to the cost of remedying its incomplete or deficient performance.

As a general rule, a contracting party who is in breach cannot maintain a suit for breach. *Dobbins v. Redden*, 785 S.W.2d 377, 378 (Tex. 1990); *see Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 196 (Tex. 2004) (noting that it is "a fundamental principle of contract law that when one party commits a material breach of that contract, the other party is discharged or excused from further performance"). In the context of construction disputes, however, the doctrine of substantial performance provides that a contractor who has substantially, although not fully, performed may still sue to enforce an agreement. *See Vance v. My Apartment Steak House of San Antonio, Inc.*, 677 S.W.2d 480, 481 (Tex. 1984); *4922 Holdings, LLC v. Rivera*, 625 S.W.3d 316, 329 (Tex. App.—Houston [14th Dist.] 2021, pet. denied). Because the doctrine of substantial performance, by definition, recognizes that the contractor has breached his obligations under the contract, although not materially, "[t]he doctrine does not permit the contractor to recover full consideration provided in the contract." *4922 Holdings*, 625 S.W.3d at 329. Instead, the contractor's recovery is decreased by the cost of remedying the defects or omissions for which he responsible. *Id.* Therefore, to prevail on a theory of substantial performance, the contractor has the burden to prove (1) that he did substantially perform, (2) the unpaid amount due to him under the contract, and (3) the cost of remedying his incomplete or deficient performance. *Vance*, 677 S.W.2d at 483.

In support of their motion for directed verdict, the Houchenses argued that Pools Unlimited could not recover for breach of contract based on substantial performance because Pools Unlimited had breached the contract and had not presented any evidence as to the cost of repairing its defective work. In response, Pools Unlimited did not deny that it had not presented evidence as to the cost of repairing any of the complained-of defects. Instead, Pools Unlimited explained that it was seeking to recover the full amount of the unpaid invoices under "a straight contract theory," not a substantial-performance theory. In other words, Pools Unlimited argued that it was not required to present evidence as to the cost of remedying any incomplete or deficient work because it fully performed its obligations under the contract. Based on the record before us, we disagree.

A party breaches a contract when it fails to perform an act that it has contractually promised to perform.[6] *Greene v. Farmers Ins. Exch.*, 446 S.W.3d 761, 765 (Tex. 2014). In this case, although there was conflicting evidence as to the agreed price for the construction, both parties presented evidence establishing that Pools Unlimited had agreed to construct a custom rock grotto waterfall with a slide and a spa. The jury was also presented with evidence, including John's testimony and video evidence presented by the Houchenses' expert, showing that the pool was leaking from inside the grotto and in the area between the spa and the pool. John also testified that although he and his family have been using the pool, they have not been able to use the slide because the plaster on the slide was "cracking" and "too rough." In addition, the updated proposal for $69,151 (which Pools Unlimited contends constitutes the parties'

---

[6] The question of what duties exist under a contract is usually a question of law, but any dispute concerning the failure of a party to comply with its duties is a fact question for the jury. *Vast Constr., LLC v. CTC Contractors, LLC*, 526 S.W.3d 709, 718 (Tex. App.—Houston [14th Dist.] 2017, no pet.); *Trinity Materials, Inc. v. Sansom*, No. 03-11-00483-CV, 2014 Tex. App. LEXIS 13884 (Tex. App.—Austin Dec. 31, 2014, pet. denied) (mem. op.).

contract) shows that Pools Unlimited agreed to install a separate Pentair heater and chiller, operational by an "Easy Touch 8 wireless controller." According to John, because a Pentair brand of chiller was not installed, the pool's electrical and automation systems failed to integrate with the Easy Touch wireless controller, as promised. Pools Unlimited did not present any evidence to contradict the Houchenses' claims as to the existence of incomplete or deficient work. We conclude that the record conclusively demonstrates that Pools Unlimited failed to deliver certain contracted-for pool features to the Houchenses and therefore as a matter of law breached at least some of its obligations under the contract.

On appeal, Pools Unlimited argues that the trial court erred to the extent that it relied on evidence of leaks or similar defective construction to conclude Pools Unlimited failed to fully perform under the contract. Pools Unlimited asserts that any remaining work on the pool was "warranty work" and that Pools Unlimited was excused from performing this work as a result of John's failure to pay the outstanding invoices. Ryan testified that when John informed him of the issues, he told John that Pools Unlimited was willing to make any repairs needed after he paid the balance of the contract. According to his testimony, Ryan could have repaired the leaks using sealants and corrected the appearance of the waterfall by adding additional rocks. Further, Ryan told the jury, he could have resolved the issue with the automation system and the EasyTouch remote by "add[ing] a relay to turn the unit off and on" after manually setting the temperature. Ryan did not make these repairs, however, because John refused to make any additional payment.

Although its argument is not entirely clear, Pools Unlimited seems to contend that, despite its incomplete or deficient construction, it fully performed under the contract because any further obligation it had to complete or correct its construction was excused by

13

the Houchenses' breach by non-payment. The doctrine of excuse by prior material breach provides a theory of recovery, separate from the doctrine of substantial performance, upon which a contractor who has failed to fully perform under a construction contract may rely. *Another Attic, Ltd. v. Plains Builders, Inc.*, No. 07-08-0312-CV, 2010 Tex. App. LEXIS 9620, at *8 (Tex. App.—Amarillo Dec. 6, 2010, no pet.) (mem. op.). Under this doctrine, a contractor's failure to complete full performance is excused when the other party to the contract has materially breached the contract. *See id.* (citing *Mustang Pipeline Co.*, 134 S.W.3d at 196). Nevertheless, "[i]n cases where a contractor has not fully performed his obligations under the contract, neither the doctrine of substantial performance nor the doctrine of excused performance permits the breaching contractor to recover the full consideration provided for in the contract." *Id.* at *9. Like the doctrine of substantial performance, when a contractor seeks to recover based on a theory that his full performance was excused by the other party's prior material breach, the contractor's recovery is limited to the unpaid amount owed on the contract less the cost of remedying the incomplete or deficient performance. *Emerson Constr. Co. v. Ranger Fire, Inc.*, No 03-09-00567-CV, 2013 Tex. App. LEXIS 10913, *20 (Tex. App.—Austin Aug. 29, 2013, no pet.) (mem. op.). Therefore, to the extent Pools Unlimited sought to recover for breach of contract based on a theory that its incomplete or deficient performance was excused, it was required to present evidence of remediation or repair costs.

Pools Unlimited sought to recover the full amount of the unpaid invoices, i.e., without any deduction for costs of remedying any incomplete or deficient performance, by proceeding on a theory that it fully performed all of its obligations under the construction

14

contract or, alternatively, that its performance was excused.[7]  The undisputed evidence, however, conclusively established that Pools Unlimited did not fully perform, but instead provided incomplete or deficient performance as to at least some of its contractual obligations.  As a result, to defeat the Houchenses' motion for directed verdict, Pools Unlimited was required to present at least some probative evidence as to the cost of remedying these defects.  Because it did not meet this burden, the trial court did not err by granting a directed verdict on Pools Unlimited's breach-of-contract claim.  We overrule Pools Unlimited's fifth issue on appeal.

### The Houchenses breach of contract claim

In its sixth issue on appeal, Pools Unlimited argues that the trial court erred by granting the Houchenses' motion to disregard the jury's finding that they sustained zero damages and, instead, rendering a judgment notwithstanding the verdict on their breach-of-contract claim for $58,500.

A trial court may disregard a jury finding if the evidence is legally insufficient to support it or if a directed verdict would have been proper because a legal principle precludes recovery.  *Ginn v. NCI Bldg. Sys.*, 472 S.W.3d 802, 843 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (citing Tex. R. Civ. P. 301).  In this case, the Houchenses moved to disregard the jury's finding on damages, an issue on which they had the burden of proof at trial, on the ground

---

[7]  In its third issue, Pools Unlimited asserts that the trial court erred in imposing a sanction that prohibited Pools Unlimited from presenting any evidence at trial demonstrating that it had commercial general liability (CGL) insurance.  Pools Unlimited further argues that the trial court erred to the extent its decision to grant the directed verdict was based on Pools Unlimited's failure to maintain CGL insurance during construction of the pool, a requirement under the contract.  *See* Tex. R. App. P. 44.1(a).  Because we have concluded that other evidence— unrelated to whether Pools Unlimited maintained CGL insurance—establishes as a matter of law that Pools Unlimited failed to fully perform under the contract, we need not decide this issue. *See id*. R. 47.1.

that there was legally insufficient evidence to support the finding. Consequently, to succeed on their motion to disregard, the Houchenses were required to show that there was no evidence to support the jury's zero-damages finding and that the evidence conclusively established the damages which they sought, $58,500. *See AZZ Inc. v. Morgan*, 462 S.W.3d 284, 291 (Tex. App.—Fort Worth 2015, no pet.) (citing *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001)); *Ginn*, 472 S.W.3d at 843 ("Specifically, in regard to damages, a trial court may render a judgment notwithstanding the verdict and substitute its own judgment only if the evidence conclusively proves the damages sought by the movant." (citing *State v. Huffstutler*, 871 S.W.2d 955, 906-61 (Tex. App.—Austin 1994, no writ))). On review, we employ this same legal-sufficiency standard. *Republic Petrol., LLC v. Dynamic Offshore Res. NS, LLC*, 474 S.W.3d 424, 429 (Tex. App.—Houston [1st Dist.] 2015, pet. denied).

We begin our analysis of the evidence with the charge as submitted to the jury.[8] In Question No. 3 of the court's charge, the jury was asked to determine:

> What sum of money, if any, if paid now in cash would fairly and reasonably compensate the Houchenses for their damage, if any, which resulted from any such conduct? Consider the following elements of damage, if any, and none other.

---

[8] Because the Houchenses sought to recover remedial damages, they were required to prove the cost to complete or repair the construction less the unpaid balance on the contract price. *McGinty v. Hennen*, 372 S.W.3d 625, 627 (Tex. 2012) (explaining that one measure of damages for "breach of a construction contract [is] remedial damages, which is the cost to complete or repair less the unpaid balance on the contract price"). In addition, the Houchenses were required to prove that the damages sought were reasonable and necessary. *Id.* (citing *Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 200 (Tex. 2004)). Although there was evidence of an unpaid balance on the contract, and the jury charge failed to properly instruct the jury to deduct any unpaid balance on the contract price, no party objected to the omission. *See, e.g.*, *Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex. 2000) (absent preserved meritorious complaint of charge error, challenges to sufficiency of evidence supporting jury findings are evaluated in light of charge as submitted).

16

. . .

    1.   The reasonable and necessary cost to repair the pool and its related features? $___

The jury answered this question: "$0."

In support of their claim for cost-to-repair damages, the Houchenses presented testimony from Michael Jentsch, whom they had designated as an expert in pool-repair methodology and costs. After explaining his qualifications in pool-construction repair, Jentsch discussed the various deficiencies he observed with the Houchenses' pool. In part, he testified that he examined the chiller installed by Pools Unlimited and that he called the manufacturer of the automation-system controller. According to Jentsch's testimony, the manufacturer informed him that the brand of chiller installed by Pools Unlimited would not integrate with the automation system. Jentsch told the jury that, in his opinion, the only way to correct this issue would be to remove the chiller installed by Pools Unlimited and replace it with a Pentair chiller, which in his opinion would cost $7,000.

In addition, Jentsch testified that he observed "water leaking underneath the spillway of the spa," "calcium deposits on the face of the rock [grotto]," and "calcium deposits . . . and minor cracking" on the slide. Jentsch detailed his observations using photographs of the leaks in the spa and the rock grotto. As to the slide, he testified that it was dangerous due to "separation of the exterior veneer where the plaster met that veneer." Jentsch told the jury that proper repair of the "spa to spillway leak" would include removing the coping and exterior stone and installing supplemental steel and that the reasonable and necessary cost to make these repairs was $9,000. Similarly, according to Jentsch, repair of the leaks in the rock grotto would require removing the stones, slide, and veneers, demolishing a portion of the

17

grotto to make "more of a round bowl," and then rebuilding the grotto. Jentsch testified that, in his opinion, the reasonable and necessary cost to repair the custom rock grotto and waterfall was $25,000 to $30,000. Finally, Jentsch testified that there would be about $10,000 in miscellaneous costs associated with the repair work, such as clean up and teaching the homeowners how to "run the pool, how to run the equipment." In summary, Jentsch testified that the reasonable and necessary cost to repair the pool, in total, was $58,500.

In their motion to disregard, and now on appeal, the Houchenses contend that Jentsch's testimony constitutes uncontradicted and conclusive evidence on the issue of damages. As a general rule, opinion testimony is not conclusive or binding on the factfinder. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986). Instead, the jury as the trier of fact is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Id.* at 696. Moreover, a jury is generally afforded considerable discretion in evaluating evidence on the issue of damages. *Id.* at 697.

Expert testimony is permitted when the expert's scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue. Tex. R. Evid. 702. However, uncontroverted expert testimony is only conclusive on an issue if the nature of the subject matter *requires* the factfinder to be guided solely by the opinion of experts and the evidence is otherwise credible and free from contradictions. *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 338 (Tex. 1998); *Liberty Mut. Ins. v. Burk*, 295 S.W.3d 771, 797 (Tex. App.—Fort Worth 2009, no pet.); *Flores v. Cuellar*, 269 S.W.3d 657, 660 (Tex. App.—San Antonio 2008, no pet.). Whether expert testimony is necessary on a contested issue is a question of law which courts review de novo. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 583 (Tex. 2004).

This Court has previously recognized that in some cases, the reasonable cost to repair real property, including residential pool construction, may be established through lay testimony. *See Seasha Pools, Inc. v. Hardister*, 391 S.W.3d 635, 641 (Tex. App.—Austin 2012, no pet.) (concluding that contractor's bids and lay testimony from property owner that bids to repair pool and light fixture were reasonable "were competent evidence from which factfinder could determine the reasonable cost of repairing the pool and light fixture"); *see also McGalliard*, 722 S.W.2d at 697 ("We do not believe the subject of house repairs to be one for experts or skilled witnesses alone."). In addition, the record in this case does not suggest that the proposed repairs of the Houchenses' pool were so technical or complex that the issue of reasonable cost of repair required expert testimony.[9] While Jentsch's "scientific, technical, or

---

[9] The Houchenses contend that expert testimony was required in this case because "[the] repairs require technical knowledge and skills if performed correctly." In support of their argument, the Houchenses rely on a case from this Court, *Paschal v. Engle*, in which we stated, "The necessity and reasonableness of repair costs are issues that require specialized or technical knowledge falling within the exclusive domain of an expert." No. 03-16-00043-CV, 2016 Tex. App. LEXIS 9161, *5 (Tex. App.—Austin Aug. 23, 2016, no pet.) (mem. op.). However, whether expert testimony was required was not at issue in *Paschal*, and this Court did not establish a bright-line rule that expert testimony is required to prove reasonableness of repair costs in every case. *See id.* at *6 (noting that "the parties do not dispute that the Paschals were required to adduce expert witness testimony to prove the amount of the reasonable and necessary cost to repair damages to their buildings and piano caused by Engle's alleged negligence"). Instead, expert testimony may only be required when the issue of cost of repair is especially technical or complex, which depends on the unique circumstances of each case. *See McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986) (noting that "the subject of house repairs [is not] one for experts or skilled witnesses alone"); *see also Stevens v. Avent*, No. 07-20-00265-CV, 2022 Tex. App. LEXIS 961, *14 (Tex. App.—Amarillo Feb. 9, 2022, no pet.) (mem. op.) (declining to establish a "bright-line rule that expert testimony is required to support an award of remedial damages" and concluding that non-expert testimony and exhibits were sufficient to support award of repair costs in dispute over home renovations); *Seasha Pools, Inc. v. Hardister*, 391 S.W.3d 635, 641 n. 8 (Tex. App.—Austin 2012, no pet.) (concluding that expert testimony was not required to establish cost to repair plaintiff's pool because "[t]here is nothing in the record to indicate that the cost associated with replastering a pool is so technical or complex that it required expert testimony"). *But see Pjetrovic v. Home Depot*, 411 S.W.3d 639, 649 (Tex. App.—Texarkana 2013, no pet.) (determining that reasonableness of cost to perform major home

19

specialized knowledge" may have been helpful to the jury and thus admissible under Rule 702, the Houchenses were not required to rely on expert testimony to prove the necessary and reasonable cost to repair their pool. Consequently, the jury was not bound to accept Jentsch's opinion as conclusive. *See McGalliard*, 722 S.W.2d at 697 ("[T]he judgments and inferences of experts or skilled witnesses, even when uncontroverted, are not conclusive on the jury or trier of fact, unless the subject is one for experts or skilled witnesses alone . . . ."). The jury could instead consider all of the testimony and evidence presented to assess the credibility and weight to be given to Jentsch's opinion. *See id.* at 696.

Prior to Jentsch's testimony, the jury was presented with evidence showing that the price to construct the entire pool, including the spa and custom rock grotto, was $69,151, according to Pools Unlimited, or $58,711, according to the Houchenses. In light of this evidence, the jury could have discredited Jentsch's opinion that $58,500 constitutes a reasonable cost to repair the rock grotto waterfall, slide, spa, and automation system. In addition, Jentsch acknowledged on cross examination that although the leaks were first observed when the pool was filled with water in 2017, the repairs still had not been made, more than three years later. Although Jentsch did not concede that the cost of repairs would have been less had the repairs been made earlier, he acknowledged that the delay may have resulted in the need for additional repairs. *Id.* at 697 (expert's testimony that he had not seen house until almost two years after leaking began and, therefore, could not testify as to cost of repairs at time, "raised a question concerning [his] credibility").

---

renovations required expert testimony). We conclude that the reasonableness of the costs at issue in this case, which largely concern repair of a rock-grotto feature and the purchase of equipment, is not so specialized or technical that expert testimony was required.

20

Viewing the evidence in the light most favorable to the jury's finding, we conclude that Jentsch's testimony does not conclusively establish that the reasonable and necessary cost to repair the Houchenses' pool is $58,500. *See Dow Chem.*, 46 S.W.3d at 241. As a result, the trial court erred in awarding $58,500 in damages to the Houchenses on their breach-of-contract claim. We sustain Pools Unlimited's sixth appellate issue.[10]

By conditional cross-point, the Houchenses assert that even if we conclude that the trial court erred in granting the judgment notwithstanding the verdict, we cannot render judgment on the verdict because the evidence is factually insufficient to support the jury's finding that the Houchenses suffered zero damages.[11] When a party challenges the factual sufficiency of an adverse finding on which it had the burden of proof, the party must demonstrate that the adverse finding is against the great weight and preponderance of the evidence. *Id.* at 242. In assessing whether this burden has been met, we consider all evidence presented to the jury, including evidence in favor of and contrary to the challenged finding. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). Because it is the jury's role to evaluate the credibility of the witnesses and reconcile any inconsistencies, *Anderson v. Durant*, 550 S.W.3d 605, 616 (Tex. 2018), we must not substitute our judgment for the jury's merely because we would have

---

[10] In its fourth appellate issue, Pools Unlimited contends that the trial court erred in allowing Jentsch to testify as to the cost of repairs and that the testimony resulted in an improper judgment. Because we conclude that the trial court erred in rendering a judgment notwithstanding the verdict based on the evidence before it, including Jentsch's testimony, we need not decide this issue. *See* Tex. R. App. P. 47.1.

[11] Ordinarily, when we determine on review that the trial court erred in granting a judgment notwithstanding the verdict, the proper remedy is to reverse and render a judgment on the jury's verdict. *Dudley Constr., Ltd. v. ACT Pipe & Supply, Inc.*, 545 S.W.3d 532, 537-38 (Tex. 2018). However, when the appellee presents by cross-point sufficient grounds, including factual sufficiency, to vitiate the verdict or prevent an affirmance of the judgment had one been entered on the verdict, the cause should instead be remanded for further proceedings. *Id.* (citing Tex. R. App. P. 38.2(b)).

weighed the evidence differently or reached a differed conclusion, *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003).

As previously discussed, the jury was presented with evidence, including testimony from John and Jentsch, demonstrating that (1) the pool was leaking from inside the custom rock grotto and between the spa and the pool; (2) the plaster on the slide was "cracking" and "too rough" to use; and (3) the automation system was not fully compatible with the chiller installed by Pools Unlimited. Although the evidence is not conclusive as to the necessity of the repair methods proposed by Jentsch or as to the reasonableness of the cost of repairs as sought by the Houchenses, there is nothing in the record contradicting the existence of the defects, Pools Unlimited's construction as the cause of the defects, or the need for repairs. As a result, the jury's finding that "the reasonable and necessary cost to repair the pool and its related features" is zero is against the great weight and preponderance of the evidence. *See Seasha Pools*, 391 S.W.3d at 642 (concluding that evidence was factually insufficient to support finding of zero damages on cost-of-repair damages because nothing contradicted written bids and testimony that those bids represented reasonable cost of repair). We sustain the Houchenses' cross-point.

## CONCLUSION

Having concluded that the trial court did not err in granting a directed verdict on Pools Unlimited's claim for breach of contract, we affirm the trial court's judgment that Pools Unlimited take nothing on this claim. Because the trial court erred by granting summary judgment in favor of the Houchenses on their fraudulent-lien claim and by rendering a judgment notwithstanding the verdict on their breach-of-contract claim, we reverse the trial court's judgment as to these claims, including the trial court's award of actual damages, exemplary

22

damages, attorney's fees, and expenses, all which were predicated on these claims. *See* Tex. Civ. Prac. & Rem. Code § 12.002 (actual damages, attorney's fees, exemplary damages for fraudulent lien), § 38.001 (attorney's fees for breach of contract); *Seasha Pools*, 391 S.W.3d. at 643 (reversing for further proceedings on issue of damages and for further consideration of attorney's fees).

Because there is a fact issue as to whether Pools Unlimited's mechanic's lien was fraudulent, we remand the Houchenses' fraudulent-lien claim for a new trial. Also, because the evidence is factually insufficient to support the jury's finding of zero damages, we remand the Houchenses' breach-of-contract claim for a new jury trial. *See* Tex. R. App. P. 44.1(b); *Rancho La Valencia, Inc. v. Aquaplex, Inc.*, 383 S.W.3d 150, 152 (Tex. 2012) (per curiam) (explaining that appellate court could not remand for new trial on damages only; under Rule 44.1(b), "it must remand for a new trial on both liability and damages").

_____

Chari L. Kelly, Justice

Before Chief Justice Byrne, Justices Triana and Kelly

Affirmed in Part; Reversed and Remanded in Part on Motion for Rehearing

Filed: November 9, 2022

23